BROKAW-EDEN MANUFACTURING COMPANY *vs.* JOHN
W. LOCKERBIE.

Suffolk.    November 10, 1920. — March 1, 1921.

Present: RUGG, C. J., BRALEY, DE COURCY, CROSBY, & PIERCE, JJ.

*Contract*, Construction.  *Sale.  Agency*, Commission.  *Words*, "Purchased."

By the provisions of a contract in writing between a manufacturing corporation
and a sales corporation, the sales corporation placed its order with the manu-
facturing corporation for ten thousand machines, deliveries to be at the rate of
twenty machines a day, with a right in the sales corporation to terminate the
agreement if the price thereof became "prohibitive," and the sales corporation
agreed to pay its agent fifty cents "on each machine purchased under this
contract." By a contract in writing between the sales corporation and its agent,
the sales corporation agreed to pay its agent fifty cents on each machine "pur-
chased" from the manufacturing corporation under the first agreement. No
machines were delivered by the manufacturing corporation to the sales cor-
poration and the contract between the two corporations was cancelled by mutual
agreement without the agent's knowledge.  *Held*, that the sales corporation was
not liable to the agent for fifty cents on each of the ten thousand machines "or-
dered" by it from the manufacturing corporation, none of them having been
"purchased."

CONTRACT for $3,241.34 upon an account annexed for mer-
chandise sold and delivered.  Writ dated October 19, 1917.

The defendant filed a declaration in set-off in four counts.
By the second count, which alone now is material, he claimed
$4,052.50, being $5,000, alleged to be due as commission under
the contracts described in the opinion as "E" and "F," less cer-
tain royalty credits.

The action was referred to an auditor, who found for the plain-
tiff in the sum of $1,933.07, and afterwards was tried before
*Fox*, J., upon the auditor's report as the only evidence.

Material provisions of the contract, referred to in the opinion
as "E," between the Pneuvac Company as party of the first part
and the plaintiff as party of the second part were as follows:

". . . The party of the second part hereby places its order for
ten thousand or more of said machines, and such of attachments

as it may require, subject to all the terms and conditions of this agreement. . . .

"Duplicate copies of all invoices shall be mailed at time of billing to John W. Lockerbie, No. 372 Boylston Street, Boston, Mass. The party of the second part agrees to pay to the said John W. Lockerbie the sum of fifty cents on each machine purchased under this contract, from the party of the first part, less returns, and agrees further to hold harmless the said party of the first part, from the claims and demands of said John W. Lockerbie for the payment of his said fifty cents per machine.

"Deliveries of machines under this agreement shall be at the minimum rate of 20 machines per day and increase 5 machines per day each calendar month until ten thousand machines shall have been delivered and thereafter on the same basis until either party shall discontinue the arrangement by thirty days' written notice; provided, that in the event the price of said machines at any time shall advance to a point which, in the judgment of the party of the second part, becomes prohibitive, said party of the second part may terminate this agreement by written notice, thereafter purchasing such quantity of machines, at the last agreed price, as will use up any special material in the possession of the M. S. Wright Co. . . .'

Material provisions of the contract, referred to as "F" in the opinion, between the plaintiff as party of the first part and the defendant as party of the second part, were as follows:

". . . Said party of the second part agrees to purchase from said party of the first part such Eden electric vacuum cleaners as he may desire at a price 50 cents in advance of the price at which said cleaners are billed to the party of the first part by the said Pneuvac Company, and said party of the first part agrees to sell said machines at said price to said party of the second part. Tools for said machines to be billed to the party of the second part at the same price as billed by the Pneuvac Company to the party of the first part. Delivery of said cleaners and tools to be F. O. B., Worcester, Massachusetts, subject to any delays and conditions surrounding the purchase of said cleaners and tools from the said Pneuvac Company. Terms of payment on the above cleaners and tools to be net on the fifteenth of the month following date of shipment.

"Said party of the first part agrees to pay to the party of the second part 50 cents on each electric vacuum cleaner purchased, less returns, from the said Pneuvac Company under a certain agreement, dated May 1, 1916, between the party of the first part and the said Pneuvac Company. . . ."

By order of the judge, the jury returned a verdict for the plaintiff for the sum of $2,255.90, and the judge ruled as a matter of law that the defendant was not entitled to go to the jury upon the matters covered by the second count of his declaration in set-off, and by agreement of the parties reported the case to this court for determination, the verdict to stand if his ruling that the defendant was not entitled to go to the jury on the second count of his declaration in set-off was right; otherwise, the case to stand for trial, or such other order to be made as the case required.

*J. D. Taylor,* for the defendant.

*R. C. Evarts,* for the plaintiff.

BRALEY, J.   The defendant, while not questioning the auditor's findings that the plaintiff sold and delivered to him goods according to the account annexed, contends, that under the second count of his declaration in set-off he is entitled to recover by the terms of the contracts of May 1, 1916, referred to in the record as exhibits "D," "E," and "F," a sum in excess of the plaintiff's entire claim.   The auditor's report, which was the only evidence at the trial, states that, prior to the date of any of the six contracts appearing in the record, the defendant had acted as the plaintiff's sole and exclusive agent for the sale of the "Eden Electric Home Laundry Machine" within a designated but very restricted field.   The defendant, however, during his agency "had conceived or improved an electrical device known and called an 'Electric Vacuum Cleaner' which had been manufactured for him by the Pneuvac Company, and for which he had created a market under the name of Red E and a public demand therefor. At some time the attention of the plaintiff was directed to this . . . cleaner and . . . negotiations began . . . looking toward a contract whereby the plaintiff was to purchase and the defendant supply cleaners of this description."   The defendant, not being financially able to enter into a contract of the magnitude contemplated, "introduced the plaintiff . . . to the Pneuvac Company for the purpose of establishing a relation between the

plaintiff" and the company whereby the company "was to manufacture for the plaintiff, cleaners of the same type as that thereinbefore conceived or improved by the defendant, he to benefit as thereafter agreed." The contracts dated January 17, 1916, and designated in the record as A, B and C, were simultaneously executed, and the plaintiff thereunder received the full benefit of the defendant's services as its "exclusive sales agent for the New England States, for all Eden and Brokaw-Eden products." The Pneuvac Company undertook to pay the defendant upon receipt of payments from the plaintiff "for said machines, the difference between eleven . . . dollars and the price at which the machines are billed to and paid for by the said Brokaw-Eden Manufacturing Company." The plaintiff having ordered "two thousand of said machines . . . to be billed at $12 each," the defendant's commission, if the transaction was completed, would be one dollar on every cleaner. The payments however were made by the plaintiff although the money was derived from the Pneuvac Company. By contracts D, E and F, dated May 1, 1916, those agreements were cancelled, and thereafter the plaintiff obligated itself to make the payments, which were reduced to fifty cents, ".on each electric vacuum cleaner purchased." In order to determine the basis on which all parties to the new arrangement intended the computation should rest, these contracts, as the defendant contends, may be construed in so far as material as one instrument. *Makepeace* v. *Harvard College*, 10 Pick. 298, 301. By contract E the plaintiff "places its order [with the Pneuvac Company] for ten thousand or more of said machines, and such of attachments as it may require, subject to all the terms and conditions of this agreement." It appears that no cleaners satisfactory to the plaintiff ever were delivered by the Pneuvac Company, and, the contract between them having been mutually cancelled without the defendant's knowledge, he is left to the contention that the order in question is the equivalent of an order for "ten thousand or more of said machines," as if they had been on hand and ready for delivery, title to which passed to the plaintiff. *Goddard* v. *Binney*, 115 Mass. 450. *White* v. *Solomon*, 164 Mass. 516. But it is plain that, until their manufacture and delivery, the cleaners had not been purchased within the meaning of the contract, and, no commissions having been payable to

the defendant, he cannot maintain his set-off, and the verdict for the plaintiff must stand. *Barrie* v. *Quinby,* 206 Mass. 259, 267.

*So ordered.*