PITTSFIELD AND NORTH ADAMS RAILROAD CORPORATION *vs.* BOSTON AND ALBANY RAILROAD COMPANY.

Suffolk.   December 10, 1926. — June 30, 1927.

Present: RUGG, C.J., BRALEY, CROSBY, PIERCE, & SANDERSON, JJ.

*Landlord and Tenant,* Construction of lease: covenant to pay "expenses."
*Contract,* In writing; Construction: conduct of parties.   *Tax,* Income.
*Railroad.   Words,* "All expenses."

In an action, by one railroad corporation against a second which was the successor to all rights of a third railroad corporation as lessee under the provisions of a lease, and renewal thereof, by the plaintiff of its railroad

together with all its "lands, depots, buildings, tracks, fixtures, property, rights, privileges and franchises thereto appertaining" with the full right to use the same in any way, the declaration set out the agreement in renewal of the lease which was between the plaintiff and the defendant as the original lessee's successor and in which was a paragraph containing covenants to be performed by the plaintiff to enable the defendant to operate the railroad and which closed with the words, "all expenses of . . . [the plaintiff] being paid by the . . . [defendant]." The lease contained no reference whatever to taxes. There were further allegations in the declaration that the defendant always had paid taxes assessed upon the plaintiff, including Federal income taxes, until the controversy arose. The action was to recover Federal income tax assessed in 1924 which the plaintiff had paid. The defendant demurred. *Held,* that

(1) It could not be said as matter of law, in view of all the allegations of the declaration, that the clause in which was found the word "expenses" was limited to such expenditures as arose from performance of the covenants of the lessor;

(2) It was difficult to believe that the subject of taxes on the railroad of the plaintiff was absent from the minds of those who drafted the two indentures;

(3) The words "all expenses" in the circumstances were ambiguous and therefore the interpretation placed by the action of the parties through so many years upon the scope of that obligation imposed upon the defendant by the indenture was of controlling significance;

(4) The declaration set forth a good cause of action;

(5) *Stony Brook Railroad* v. *Boston & Maine Railroad, ante,* 379, distinguished.

Position of a clause in a written instrument is not a decisive factor in determining its meaning or its modifying effect; its subject matter is a significant element in this regard; its relative importance must be weighed in connection with all the other conditions in the instrument and the purpose to be accomplished.

The general rule that, where a lease is silent on the subject, the obligation to pay taxes rests upon the lessor, is not an inflexible principle; it yields to a contrary conclusion where overbalancing considerations lead to that result.

It is a general rule for the construction of written instruments that, when the language is open to doubt and parties whose interests are diverse have from the outset adopted and acted upon a particular construction, such construction will be of great weight with the court, and will usually be adopted by it.

CONTRACT, with a declaration as amended described in the opinion. Writ dated June 2, 1925.

The defendant demurred to the declaration. The demurrer was heard and overruled in the Superior Court by *Cox,* J., who reported his ruling to this court for determination.

*N. Matthews, (C. H. Baesler* with him,) for the plaintiff.

*L. A. Mayberry, (G. H. Fernald, Jr., & W. F. Levis* with him,) for the defendant.

RUGG, C.J.   This is an action of contract brought to recover certain instalments of the Federal income tax assessed against the plaintiff on account of rental received by it from the defendant. · The case was heard upon a demurrer to the declaration.   The allegations in brief are that both the plaintiff and the defendant are corporations organized under the laws of Massachusetts.   In 1845, at about the time of the incorporation of the plaintiff, the Western Railroad Corporation entered into a written agreement with subscribers of stock in the plaintiff whereby, in consideration of subscriptions to stock of the plaintiff to construct its railroad, the amount to be not less than a specified sum, the Western Railroad Corporation agreed with the subscribing parties that it would take a lease of the railroad of the plaintiff for a stated term for a rental to equal six per cent upon the cost of the railroad.   In 1846 an indenture under seal was entered into by the plaintiff and the Western Railroad Corporation, a predecessor of the defendant, whereby the Western Railroad Corporation agreed to construct and finish the Pittsfield and North Adams Railroad "in the name and under the charter of the party of the second part [the Pittsfield and North Adams Railroad Corporation], with funds to be provided by the said party of the second part;" and the plaintiff did lease unto the Western Railroad Corporation the whole of its railroad together with all its "lands, depots, buildings, tracks, fixtures, property, rights, privileges and franchises thereto appertaining" with the full right to use the same in any way. The term of this lease was for thirty years with a right of renewal.   It is further alleged that "the said Western Railroad Corporation agreed by said indenture to pay all expenses of the plaintiff; to proceed in the name and under the charter of the plaintiff to construct said Pittsfield and North Adams Railroad Corporation, its buildings and fixtures as the funds shall be provided by the plaintiff; when constructed to provide the necessary power and equipment

and open and run the same during the demised term." The rent reserved was a sum equal to six per cent annually of the whole cost of the road. The railroad was completed and opened for public use in 1846 and operated by the Western Railroad Corporation in conformity to the lease. In 1867, the Boston and Albany Railroad Company became the corporate successor of the said Western Railroad Corporation and operated the said demised railroad during the remainder of the term of the 1846 indenture. The option for a new lease was exercised by the defendant and an indenture between the plaintiff and defendant was executed in 1876. This indenture contained substantially the same description of the property demised as the earlier indenture and conferred many of the same powers upon the lessee. The clause as to rental was that the defendant will "pay as rent therefor a sum of Twenty-Two Thousand Five Hundred dollars, said sum being equal to five per cent annually upon the amount of the whole cost of said road, its buildings and fixtures, as the same shall have been paid" by the plaintiff, to be paid semiannually during the term, which was for ninety-nine years. The lease contained the further clause, identical with a clause in the indenture of 1846, namely: "And the said party of the second part [the plaintiff] hereby covenant and agree with the said party of the first part [the defendant] their successors and assigns, that they will during the term, in which the provisions of this indenture shall be in force, at all times continue and preserve the legal organization of the said Pittsfield and North Adams Railroad Corporation; will hold such meetings, pass such votes, appoint all such officers, and confer upon them all such powers, keep such records of their proceedings, make such reports to the Legislature or otherwise, as may be required by law, and do all such other acts as may be necessary and proper to carry into full effect all the objects and provisions of this indenture, and that they will on reasonable demands, hereafter give such other assurances as may be necessary therefor, all expenses of said party of the second part, being paid by the party of the first part." Further allegations of the declaration are that after the making of the indenture of 1846 and

during its term the Western Railroad Corporation and the defendant after 1867 paid "all the expenses of every kind of the plaintiff and all moneys and debts including taxes due by it to any person, corporation or governmental authority," and that after the indenture of 1876 the defendant and its successors have operated the demised railroad and have "paid annually all the local taxes assessed annually to the plaintiff on its property by the cities and towns through which its railroad runs, and all the franchise taxes assessed annually by the Commonwealth," and that it has paid all Federal income taxes assessed upon the plaintiff based upon the income accrued under the indenture of 1876 from the date when such taxes were first imposed, about 1900, to 1924, except a part of those for 1924 which are sought to be recovered in the present action. Allegations as to the relations of the defendant with the New York Central Railroad Company have no direct bearing upon the questions of law to be decided, and hence we make no summary of them.

The instrument out of which this litigation arises is a lease of a railroad. The legal perspective of the transaction is that the original lessee corporation held out inducements for the furnishing of funds to build the railroad of the plaintiff and shortly thereafter the two corporations entered into an indenture whereby among other matters the lessee corporation agreed to construct the railroad of the plaintiff and then to operate it for thirty years. In this indenture the words vital to the present controversy first appear. They were inserted without substantial change in the present indenture on the expiration of the earlier one. Thus it appears that the plaintiff corporation has never been an operating railroad company, but furnished the money for the construction of its railroad and thereafter has simply maintained its corporate existence and received the rent due under the two indentures from the defendant and its corporate predecessor. The plaintiff has never been in actual occupation of its railroad. For all operative purposes it has contracted to be out of possession from its beginning for a period of one hundred and twenty-nine years. The rent reserved, in the first indenture being six per cent on the cost

of the railroad of the plaintiff as to be constructed and completed by the lessee, and five per cent on the cost in the second indenture, is a modest return upon capital invested in a public utility as far as such rates are matters of common knowledge or established by rate decisions of the courts.

The relations of the plaintiff with the defendant and its predecessors in respect to the subject matter of the indentures and the practical construction by them placed upon it may be considered to make clear the situation of the parties and the probable meaning and purpose of their contract. *Jennings* v. *Whitehead & Atherton Machine Co.* 138 Mass. 594, 596. *Brokaw-Eden Manuf. Co.* v. *Lockerbie,* 237 Mass. 463, 465. *Eustace* v. *Dickey,* 240 Mass. 55, 72. *Lowrey* v. *Hawaii,* 206 U. S. 206, 222. *Schoellkopf* v. *Coatsworth,* 166 N. Y. 77, 84.

In neither of the indentures whereby the property of the plaintiff was leased is mention made of taxes of any kind. There is no reference to that subject by name in either instrument. The plaintiff rests its claim on the concluding words of the paragraph of the lease already quoted, to the effect, "All expenses of said party of the second part [the plaintiff], being paid by the party of the first part," which is the defendant. All of that paragraph which precedes this concluding clause states covenants to be performed by the plaintiff as lessor. The concluding clause states an obligation of the lessee. It makes no reference to the covenants of the lessor. It relates to an entirely different subject. The two parts of the paragraph are not connected by any words indicating interdependency. The paragraph as a whole is not an enumeration of specific matters followed by a general phrase of the same nature, but it states a combination of obligations, one resting upon the lessee and the rest upon the lessor. This concluding clause does not by words confine or constrict the statement that "all expenses" of the plaintiff are to be paid by the defendant. The expenses are not expressly limited to such as may be incurred by the plaintiff in the performance of its covenants. If any limitation of that character is to be found, it must rest upon the context in which the words occur. Perhaps there may be

instances, where the context would indicate a reference to the subject immediately preceding in the written document. But this is not of that kind. It would have been simple to insert words to the effect that the defendant should pay all expenses of the plaintiff incurred in the performance of its covenants, if that had been the intention of the parties. Position of a clause in a written instrument is not a decisive factor in determining its meaning or its modifying effect. Its subject matter is a significant element in this regard. Its relative importance must be weighed in connection with all the other conditions in the instrument and the purpose to be accomplished.

No particular form of expression is essential to create a covenant on the part of a lessee to pay taxes. "To constitute a covenant, it is not necessary that the word covenant, or any other particular word or words should be made use of; for any words in a deed, in what part soever found, from which the intent of the parties to enter into an engagement can be collected, are sufficient for that purpose." *Newcomb* v. *Presbrey*, 8 Met. 406, 410. *Peters* v. *Stone*, 193 Mass. 179, 185. The statement of the indenture respecting payment of the expenses of the lessor by the lessee is in the form of a participial phrase instead of a direct covenant by the lessee; but it is plain that the true intent of the statement is to impose a direct obligation on the lessee for the benefit of the lessor. We are of opinion that it cannot be said as matter of law, in view of all the allegations of declaration, that the clause in which is found the word "expenses" is limited to such expenditures as arise from the covenants of the lessor.

It is difficult to believe that the subject of taxes on the railroad of the plaintiff was absent from the minds of those who drafted these two indentures. Prior to St. 1864, c. 208, whereby the franchise tax was established, there was no valid statute in this Commonwealth providing for the levy of any tax upon railroad corporations except the general law requiring assessment of taxes upon physical property in the several cities and towns where situated. *Worcester* v. *Board of Appeal*, 184 Mass. 460. *New England & Savannah*

*Steamship Co.* v. *Commonwealth,* 195 Mass. 385, 386. Railroad stations and other property might be subject to local taxation unless coming within recognized exemptions. *Worcester* v. *Western Rail Road,* 4 Met. 564. *Boston & Maine Railroad* v. *Cambridge,* 8 Cush. 237. It well may have been that taxes were annually recurring for consideration in every municipality in which the plaintiff owned property. *Connecticut Valley Street Railway* v. *Northampton,* 213 Mass. 54, 57, 58.

It is the general rule that, where the lease is silent on the subject, the obligation to pay taxes rests upon the lessor. *Boston Molasses Co.* v. *Commonwealth,* 193 Mass. 387, 391. *Rutland Railroad* v. *Central Vermont Railway,* 63 Vt. 1, 25. That, however, is not an inflexible principle. It yields to a contrary presumption where overbalancing considerations lead to that result. *Harvard College* v. *Aldermen of Boston,* 104 Mass. 470, 483. *Codman* v. *Johnson,* 104 Mass. 491, 493. *Norfolk* v. *Perry Co.* 108 Va. 28, 30; affirmed, 220 U. S. 472, 478, 479. *Canadian Pacific Railway* v. *Toronto Corp.* [1905] A. C. 33.

"Expenses" is a word of broad import. It has no fixed definition. It is of varying signification and is dependent for its precise meaning upon its connection and the purpose to be accomplished by its use. It is comprehensive enough to include a wide range of disbursements. Standing alone, it is ambiguous. Its breadth of meaning shows the diversity of subjects which may be included within it. *Burrage* v. *County of Bristol,* 210 Mass. 299. In numerous adjudications it has been held to include taxes. It may comprise every kind of impost or pecuniary imposition levied for the support of government. *Seymour* v. *Warren,* 179 N. Y. 1, 5, 6. *Simmons* v. *Simmons,* 99 Conn. 562, 570. *Kane* v. *Schuylkill Fire Ins. Co.* 199 Penn. St. 205, 208. *Foster* v. *Goddard,* 1 Cliff. 158, 168, 176; affirmed, 1 Black, 506, 514.

It follows that in our opinion the written contract is ambiguous in its terms as to the meaning of the obligation imposed on the lessee to bear "all expenses of" the lessor. It differs in this respect from that under consideration in *Stony Brook Railroad* v. *Boston & Maine Railroad, ante,*

379.  Therefore the interpretation placed by the action
of the parties through so many years upon the scope of
that obligation imposed by the indenture upon the defend-
ant is of controlling significance.  It is manifest that the
parties understood the obligation of the defendant, arising
from the presence in the indenture of the clause to the effect
that it should pay "all expenses" of the plaintiff, to embrace
all kinds of taxes levied or assessed against it or upon its
property.  On no other ground can the action of the de-
fendant in paying all local, State and Federal taxes assessed
upon the plaintiff be explained.  Conduct of this nature is
always important in determining the meaning of doubtful
words in a contract.  It was said in *Winchester* v. *Glazier*,
152 Mass. 316, 323, "It is a general rule for the construc-
tion of written instruments . . . that when the language
is open to doubt, and parties whose interests are diverse
have from the outset adopted and acted upon a particular
construction, such construction will be of great weight with
the court, and will usually be adopted by it."  In *Insurance
Co.* v. *Dutcher*, 95 U. S. 269, it was said, "There is no surer
way to find out what parties meant, than to see what they
have done."  That principle has been stated in various forms
of words and followed in numerous cases.  *Wood* v. *Edison
Electric Illuminating Co.* 184 Mass. 523, 528.  *New York
Central Railroad* v. *Stoneman*, 233 Mass. 258, 263.  *South-
borough* v. *Boston & Worcester Street Railway*, 250 Mass. 234,
238.  *Wit* v. *Commercial Hotel Co.* 253 Mass. 564, 572.  *Boston
& Albany Railroad* v. *New York Central Railroad*, 256 Mass.
600, 609.  It was even held in *District of Columbia* v. *Gallaher*,
124 U. S. 505, 510, that "the practical construction which
the parties put upon the terms of their own contract, and
according to which the work was done, must prevail over
the literal meaning of the contract."

According to the allegations of the declaration, the de-
fendant has paid the Federal income tax assessed to the
plaintiff for a number of years.  This conduct, in connection
with the payment of all other taxes, gives a decisive turn to
the somewhat ambiguous language of the indenture, and

throws the entire burden of the plaintiff's taxation, Federal as well as State, upon the defendant.

The case at bar is distinguishable from *Stony Brook Railroad* v. *Boston & Maine Railroad, supra,* in that, in that case, there was an express covenant on the part of the lessee to pay some taxes not broad enough in terms to include the Federal income tax. In the case at bar the covenant is to pay "all expenses" of the lessor. A tax on its income is as much a part of the plaintiff's expenses as local taxes on tangible property, or a franchise tax on its right to be a corporation.

The conclusion is that the first count in the declaration sets forth a good cause of action. It is unnecessary to consider the other points argued.

*Order overruling demurrer affirmed.*