EASTERN MASSACHUSETTS STREET RAILWAY COMPANY *vs.* BOSTON ELEVATED RAILWAY COMPANY.

Suffolk. December 7, 8, 1938. — January 28, 1942.

Present: FIELD, C.J., QUA, DOLAN, & RONAN, JJ.

*Landlord and Tenant,* Construction of lease, Covenant to pay taxes. *Words,* "The income from the demised premises."

In a lease in writing by one street railway company to another in 1903, at a stipulated rent based on replacement values of the leased property, of a part of its railway with the right to receive all revenue, income and profits from the "demised premises," the lessee to operate the "demised railway" at its own expense, a provision that the lessee should "pay or furnish to the lessor the money necessary to pay all taxes of every description Federal, State and municipal, levied upon" specified kinds of property and upon "the income" from the "demised premises," did not require the lessee to refund to the lessor any part of a Federal income tax the lessor had paid by reason of its receipt of the stipulated rent.

The facts, that the lessee, under a lease made in 1903 and containing a covenant by him to reimburse the lessor for certain taxes, reimbursed the lessor for Federal income taxes upon the rent received by him from 1909 to 1917 but not thereafter, did not require an interpretation of the covenant, different from that called for by its language, on the question whether the lessee was required by it to reimburse the lessor for such tax on the rent for the years 1921 and following.

CONTRACT. Writ in the Superior Court dated November 15, 1930.

The action was heard upon a case stated by *Greenhalge,* J., who ordered judgment for the defendant and reported the action.

*P. Nichols,* (*J. A. Boyer* & *P. G. Carleton* with him,) for the plaintiff.

*C. W. Mulcahy,* (*W. B. Downey* & *J. F. Desmond* with him,) for the defendant.

FIELD, C.J. By a written lease dated February 16, 1903,

the Old Colony Street Railway Company leased a certain portion of its lines of railway and other property appurtenant thereto in the city of Boston to the Boston Elevated Railway Company. The demised property is described in the lease as all the lessor's "railway and branches thereof" situated in a certain part of Boston, with a detailed description thereof, and including therein all the lessor's "licenses, rights, franchises, easements, privileges and appurtenances belonging or appertaining thereto, or conveniently used in connection therewith" — with certain exceptions not here material — "Together with the right to demand and receive all rents, tolls, revenue, income and profits from the demised premises, subject to the provisions hereinafter contained and except as hereinafter otherwise provided; together with the benefit of all rights secured to the Lessee under the following provisions in this instrument contained." The rent reserved under the lease, to be paid by the lessee to the lessor, was to be "based upon the adjusted replacement value of the property demised as of the date of this agreement and upon the adjusted betterment value of the property from time to time," and was "a sum equal to six and one-eighth (6⅛) per centum per annum upon the adjusted replacement value of the property demised, and a sum equal to four (4) per centum per annum upon the adjusted value of betterments from time to time." On or about May 31, 1919, the Eastern Massachusetts Street Railway Company succeeded to all the right, title and interest of the Old Colony Street Railway Company and its successor, Bay State Street Railway Company, under said lease.

The Eastern Massachusetts Street Railway Company (herein referred to as the lessor) brought this action of contract against the Boston Elevated Railway Company (herein referred to as the lessee) to recover the sum of $5,124.68 included in the amount of Federal income tax paid by the lessor for the year 1926. The case was heard upon a case stated, and judgment was ordered for the defendant. At the request of the parties the case was reported to this court.

The primary question for decision is whether the lessee is liable to the lessor for the Federal income tax paid by the lessor with respect to the rental received by the lessor under the lease for the year 1926. A secondary question, if the lessee is so liable, relates to the amount for which such lessee is liable. The case stated contains the following statement: "The parties have agreed to submit to the court the facts bearing upon said issue in respect to a typical year 1926, and have also agreed, if the court finds the defendant obligated to pay any portion of the plaintiff's income tax for that year, to adjust between themselves on the basis of the court's decision the payments in respect to Federal income taxes to be made by the defendant to the plaintiff for the years since and including 1921."

The question of liability turns on the provisions of article 1 of the lease, interpreted in the light of the other provisions of the lease, as applied to the facts agreed. Said article 1, so far as material, is as follows: "The Lessee shall at its own expense during the said term operate the demised railway and, except as herein otherwise provided, make all renewals, extensions, improvements, and betterments; and shall meet all expenses and liabilities arising from the care, control, maintenance, repair, renewal and operation of the said premises; including all expenditures and liabilities in tort, contract and otherwise arising therefrom or in any way connected with the use and operation of the demised premises, including insurance, and shall pay or furnish to the Lessor the money necessary to pay all taxes of every description Federal, State and Municipal, levied upon the demised property, the income therefrom, the business thereof, and the rights and franchises thereto pertaining, and upon a portion of the capital stock of the Lessor (whether levied or assessed as a tax upon corporate franchise or otherwise, and ascertained by, or in relation to, or directly or indirectly based upon, a valuation of the shares of said capital stock) equal in value at par to the replacement value of the property demised after deducting from said replacement value the assessed value of any real estate and machinery or other property included in the

demised property and subject to local taxation in said Boston; and also any such taxes by law required to be deducted from any amounts payable as dividends or otherwise to the owners of such portion of the Lessor's capital stock."

The lessor reported in its Federal income tax return for the year 1926, upon which its Federal income tax for that year was assessed, a total gross income of $9,797,816.94, and deductions from income of $9,068,775.80, leaving a net income of $729,041.14, the tax upon which at the statutory rate of thirteen and one half per cent amounted to $98,-420.55. Included in this total gross income was $37,960.56, "Rental paid under lease by Boston Elevated Railway Company for use of West Roxbury property" — the lease here in question. The lessor seeks in this action to recover $5,124.68, being thirteen and one half per cent of the rental received under this lease.

Article 1 of the lease clearly contemplated that the lessee should pay Federal taxes as well as State and municipal taxes. And it is clear that it is immaterial with respect to the lessee's liability whether the taxes included in the lessee's covenant contained in article 1 were assessed to the lessor or to the lessee, since the lessee covenanted that it would "pay or furnish to the Lessor the money necessary to pay" the taxes therein described. Compare *Kimball* v. *Cotting*, 229 Mass. 541, 542. The taxes therein described are of six different kinds: (a) those "levied upon the demised property," (b) "the income therefrom," (c) "the business thereof," (d) "the rights and franchises thereto pertaining" and (e) "a portion of the capital stock of the Lessor . . . equal in value at par to the replacement value of the property demised" with certain deductions, and (f) "any such taxes by law required to be deducted from any amounts payable as dividends or otherwise to the owners of such portion of the Lessor's capital stock." This classification of the taxes for which the lessee is liable obviously limits the generality of the lessee's covenant to pay "all taxes of every description." If the lessor is to recover the amount of the tax for the recovery of which this action

is brought, such tax must be included in at least one of the six classes of taxes specifically described in article 1.

The rent of the demised property is not referred to in terms in article 1 of the lease whereby taxes were assumed by the lessee. In this respect the lessee's covenant relating to taxes differs from the covenants considered in *Suter* v. *Jordan Marsh Co.* 225 Mass. 34, *Kimball* v. *Cotting*, 229 Mass. 541, 542, *Kimball* v. *Cotting*, 234 Mass. 172, and *Kimball* v. *Maddison*, 286 Mass. 277, 279. But the question of the liability of the lessee to the lessor under this article of the lease must be determined in accordance with the principle stated in *Boston & Providence Railroad* v. *Old Colony Railroad*, 269 Mass. 190, 195, that, if "it fairly appears from the lease as a whole that the parties intended to impose upon the lessee ultimate obligation to pay an income tax assessed upon the lessor in respect to the rental, that intention will be given effect, although there is in express words no provision to that effect in the lease."

The lessor relies particularly upon the lessee's covenant to "pay or furnish to the Lessor the money necessary to pay" taxes upon "the income therefrom," obviously meaning the income from the demised property. Undoubtedly, from the standpoint of the lessor, the rent received by it from the lessee may properly be described as the lessor's "income from the demised property." See *Stony Brook Railroad* v. *Boston & Maine Railroad*, 260 Mass. 379, 384; *DeBlois* v. *Commissioner of Corporations & Taxation*, 276 Mass. 437, 439; *New York* v. *Graves*, 300 U. S. 308, 312–316. But, on the other hand, from the standpoint of the lessee, its operating revenue and other revenue, with proper deductions therefrom, may properly be described as its "income from the demised property." The question for decision on this aspect of the case, therefore, is whether "the income therefrom," that is, from the demised property, taxes upon which are assumed by the lessee, as the words are used in article 1, means or includes the lessor's income therefrom in the form of rent paid by the lessee, or is limited to the lessee's income from the demised property.

The phrase "the income therefrom" in article 1 of the lease, meaning "the income from the demised property," must be interpreted in the light of its context, and, in general, the same phrase used in different places in an instrument is to be given the same meaning, unless a different meaning is required by the context. *Eustace* v. *Dickey*, 240 Mass. 55, 76. *Commissioner of Banks in re Prudential Trust Co.* 244 Mass. 64, 71. *Dana* v. *Wildey Savings Bank*, 294 Mass. 462, 466. The precise phrase, "the income therefrom," or its equivalent, "the income from the demised property," is not used elsewhere in the lease. But a closely similar phrase, in a more extended form, is used in the demise preceding article 1. In this demise the demised property is described as consisting of three elements, not necessarily mutually exclusive, (a) the physical properties, (b) "licenses, rights, franchises, easements, privileges and appurtenances belonging or appertaining thereto, or conveniently used in connection therewith," and (c) "the right to demand and receive all rents, tolls, revenue, income and profits from the demised premises." There is a similar enumeration of three elements in the tax covenant as possible subjects of taxation, (a) "the demised property," (b) "the income therefrom," and (c) "the rights and franchises thereto pertaining." While "the demised property," as the words are used in the tax covenant, may be more inclusive than the physical properties, "the rights and franchises thereto pertaining," referred to in the tax covenant, are, in general, comparable to "licenses, rights, franchises, easements, privileges and appurtenances belonging or appertaining thereto, or conveniently used in connection therewith," referred to in the demise. Likewise "the income therefrom," that is, from the demised property, referred to in the tax covenant, is naturally comparable to the more detailed description of income in the demise, "rents, tolls, revenue, income and profits from the demised premises," the right to demand and receive which is granted by the demise to the lessee. The parties in framing the tax covenant obviously had in mind the terms of the demise closely preceding the tax covenant in the lease. It is a

natural interpretation of the tax covenant that the words "the income therefrom," that is, from the demised property, refer to the income that by the demise the lessee was entitled to demand and receive, that is, to income of the lessee. Obviously the lessee was not entitled "to demand and receive" the rent payable under the lease by the lessee to the lessor.

The inclusion in the tax covenant of other possible subjects of taxation is not in conflict with this conclusion. There was no demise, in terms, of "the business thereof," that is, of the demised property, but the demise of the property would import that the business of the railway was to be operated by the lessee, and the lease contains many provisions for operation by the lessee of the demised property. The habendum clause immediately preceding article 1 in the lease fixes the time of beginning of the ninety-nine year term of the lease and of "the operation of the demised railway by the Lessee," and a part of the lease is described as an "operating agreement." The natural interpretation of the words "the business thereof," meaning "the business of the demised property," is "the business of operating its . . . [railway] vested in the lessee under the lease" and not the business of the lessor in receiving the rent of the demised premises. See *Boston & Providence Railroad* v. *Old Colony Railroad*, 269 Mass. 190, 198–199. The use of the phrase "the business thereof" in this sense in close connection with the phrase "the income therefrom" has some tendency to show that, as the former phrase refers to the business of the lessee in operating the demised property, so the latter phrase refers to the income of the lessee derived from such operation.

The purpose is readily apparent of including among the taxes for which the lessee assumed liability the taxes levied upon "a portion of the capital stock of the Lessor (whether levied or assessed as a tax upon corporate franchise or otherwise, and ascertained by, or in relation to, or directly or indirectly based upon, a valuation of the shares of said capital stock) equal in value at par to the replacement value of the property demised after deducting from said replace-

ment value the assessed value of any real estate and machinery or other property included in the demised property and subject to local taxation in said Boston." This provision is correlative to the provision by which the lessee assumed liability for taxes "levied upon the demised property." The lease makes it clear that the lessee is to bear the burden of property taxes upon such property whether assessed to the lessor or to the lessee. But at the time the lease was executed it was familiar legislative practice to reach, in effect, property of a corporation for taxation through an excise upon the corporate franchise measured as to its value by the value of the shares of the capital stock of the corporation, with a deduction, among others, of the value of corporate property subject to local taxation. See R. L. c. 14, §§ 37–42, as amended by St. 1902, c. 342. Though a corporate franchise tax of this nature is an excise rather than a property tax, see *Commonwealth* v. *Hamilton Manuf. Co.* 12 Allen, 298; affirmed, sub nomine *Hamilton Co.* v. *Massachusetts*, 6 Wall. 632, it has been recognized that such a tax, in effect, reaches for taxation property of the corporation. See *New England & Savannah Steamship Co.* v. *Commonwealth*, 195 Mass. 385; *American Manuf. Co.* v. *Commonwealth*, 251 Mass. 329, 331. For example, exemption of property of a corporation from local taxation may be proper for the reason that such property is reached for taxation through an excise upon the corporate franchise. *Opinion of the Justices*, 195 Mass. 607, 611. Compare *Salem Iron Factory Co.* v. *Danvers*, 10 Mass. 514, 517; *Commonwealth* v. *Provident Institution for Savings*, 12 Allen, 312, 315; *Fall River* v. *County Commissioners*, 125 Mass. 567, 568; *Opinion of the Justices*, 261 Mass. 523, 545. That this provision requiring the lessee to bear the burden of a portion of the lessor's tax upon its capital stock, however levied or assessed, was to insure that the lessee should bear the burden of any tax in substance, though not in form, "levied upon the demised property," is apparent from the method fixed by the lease for determining the portion of the lessor's tax upon its capital stock that should be borne by the lessee. The further provision of the lease

imposing the burden upon the lessee of "any such taxes," referring to taxes upon capital stock of the lessor, "by law required to be deducted from any amounts payable as dividends or otherwise to the owners of such portion of the Lessor's capital stock," evidently was for the same purpose. These provisions raise no implication that the lessee is to bear the burden of taxation resting upon the lessor by reason of its right to receive rent under the lease.

Article 1 of the lease contains not only the lessee's tax covenant, but also, as a part of the same sentence, a covenant of the lessee to "operate the demised railway" "at its own expense," including the making of "renewals, extensions, improvements, and betterments," and to "meet all expenses and liabilities arising from the care, control, maintenance, repair, renewal and operation of the said premises; including all expenditures and liabilities in tort, contract and otherwise arising therefrom or in any way connected with the use and operation of the demised premises, including insurance." In view of the inclusion in the lease of a specific provision relating to the lessee's liability for taxes, the provision relating to expenses imposes no liability upon the lessee for the payment of taxes, whatever would be the effect in this respect of the provision relating to expenses in the absence of a specific provision relating to taxes. The lessee's liability with respect to taxes is fixed by the tax covenant, which deals with this liability in considerable detail and is to be regarded as intended by the parties to cover the entire subject. See *Pittsfield & North Adams Railroad* v. *Boston & Albany Railroad*, 260 Mass. 390, 399. Nevertheless, particularly in view of the close connection between the provision relating to expenses and that relating to taxes, the former provision furnishes some aid in interpreting the latter. See *Radio Corp. of America* v. *Raytheon Manuf. Co.* 300 Mass. 113, 117. And the expenses to be paid by the lessee under the provision relating to expenses are limited to expenses of the lessee in the use and operation of the demised railway, although such expenses are of broad scope, as defined

with considerable particularity in the provision relating to such expenses. Even though such expenses are of broad scope, they do not purport to include expenses of the lessor not relating to the use and operation of the demised property by the lessee. In this respect the lessee's covenant to pay expenses is more restricted than the covenant considered in *Pittsfield & North Adams Railroad* v. *Boston & Albany Railroad*, 260 Mass. 390. The provision relating to expenses, therefore, tends to support the conclusion that the taxes, liability for which the lessee assumed, are limited to taxes relating to the use and operation of the demised property, including, of course, taxes levied directly thereon, or indirectly through a tax upon a portion of the capital stock, and consequently that the taxes levied upon "the income therefrom," that is, from the demised property, are those levied upon the income of the lessee derived from the use and operation of such property.

The interpretation of the words "the income therefrom," that is, from the demised property, as inapplicable to the income of the lessor received as rent cannot rightly be regarded as incorrect on the ground that, according to this interpretation, the words would have no practical effect. The lease was executed when no Federal income tax law was in force. While this fact would not preclude the inclusion of such a tax among the taxes for which the lessee was to be ultimately liable (*Boston & Providence Railroad* v. *Old Colony Railroad*, 269 Mass. 190, 196), it shows that the tax covenant was not drawn with respect to any specific form of Federal income tax. And it was not unnatural for the parties to guard against any conceivable burden upon the lessor for such a tax upon income derived by the lessee from the use and operation of the demised property, resulting from the inclusion of such income for the purpose of such a tax in the income of the lessor or from the imposition of a lien for such a tax upon the demised property, or otherwise. It was no more unnatural to include such a provision relating to taxes upon the income of the lessee from the demised property, than to include the provision guarding the lessor against liability for taxes upon "the

business thereof," that is, of the demised property, carried on by the lessee.

Clearly none of the taxes described in the lessee's tax covenant, other than those upon the income from the demised property already considered, includes the Federal income tax upon the rent received by the lessor under the lease. Such a tax is not a tax on "the demised property," or "the rights and franchises thereto pertaining," whether levied directly on the property or reaching such property indirectly by a tax upon the capital stock of the lessor. *Codman* v. *American Piano Co.* 229 Mass. 285, 290. *Stony Brook Railroad* v. *Boston & Maine Railroad,* 260 Mass. 379, 384. *Nashua & Lowell Railroad* v. *Boston & Maine Railroad,* 260 Mass. 387. Nor is such a tax a tax upon the capital stock or the corporate franchise of the lessor, considered in accordance with the true nature of the tax and not merely as a medium of reaching for taxation the property of the lessor. *Stony Brook Railroad* v. *Boston & Maine Railroad,* 260 Mass. 379, 384. *Nashua & Lowell Railroad* v. *Boston & Maine Railroad,* 260 Mass. 387. Finally, for reasons already pointed out, such an income tax is not a tax on "the business thereof," that is, of the demised property. *Boston & Providence Railroad* v. *Old Colony Railroad,* 269 Mass. 190, 198–199.

As a general rule, "where the lease is silent on the subject, the obligation to pay taxes rests upon the lessor." *Pittsfield & North Adams Railroad* v. *Boston & Albany Railroad,* 260 Mass. 390, 397. If, as is the case, this is true of property taxes on leased property (see *Boston Molasses Co.* v. *Commonwealth,* 193 Mass. 387, 391), it is even more clearly true of income taxes upon rent received by the lessor under the lease. The lease now in question, however, is not silent on the subject of taxes. On the contrary, it describes in considerable detail the taxes that the lessee ultimately is to pay. And the lessee's liability does not depend upon whether a tax is assessed upon the lessor or upon the lessee. Some of the taxes that are ultimately to be paid by the lessee are taxes assessed upon the lessor. The lessee's liability for a tax, on the contrary, depends

upon whether such tax is upon a subject of taxation described in the tax covenant. If it had been the purpose of the parties to the lease to include among these subjects of taxation the rent received by the lessor under the lease, it would have been simple to have used words expressive of that purpose. See *Stony Brook Railroad* v. *Boston & Maine Railroad,* 260 Mass. 379, 384. Such a provision referring in terms to taxes upon "rent" is not uncommon. See *Suter* v. *Jordan Marsh Co.* 225 Mass. 34; *Kimball* v. *Maddison,* 286 Mass. 277, 279. And the same purpose could have been attained without the use of the word "rent" if taxes upon "income" of the *lessor* had been referred to. See *Boston & Providence Railroad* v. *Old Colony Railroad,* 269 Mass. 190, 195. Even a reference to "expenses" of the *lessor* might conceivably have been sufficient. See *Pittsfield & North Adams Railroad* v. *Boston & Albany Railroad,* 260 Mass. 390, 395. As already pointed out, the tenor of this tax covenant is to impose upon the lessee the burden of expenses and taxes arising out of the use and operation by the lessee of the demised property, including taxes upon such property. The lessor demised the property to the lessee to be used and operated by the lessee with its attendant burdens. The language of the tax covenant does not import an assumption by the lessee of the further burden of paying such part of the lessor's Federal income tax as is imposed upon the lessor by reason of the receipt by it of rent under the lease.

No different conclusion can rightly be based on the ground, urged by the lessor, that by the lease as a whole the parties disclosed an intention that the lessor should receive a "net rent." In a sense the lease did so provide by imposing upon the lessee the burden of expenses and taxes arising out of the use and operation of the demised property, and by providing for the payment by the lessee to the lessor of an annual rent, unaffected by such expenses and taxes, computed at fixed percentages upon adjusted replacement values of the property. But a provision for payment by the lessee of the lessor's Federal income tax upon the rent received by it as fixed by the lease would, in effect,

provide for the payment of additional rent by the lessee beyond the amount of the rent so specifically fixed. *United States* v. *Boston & Maine Railroad*, 279 U. S. 732, 734. · See also *Old Colony Trust Co.* v. *Commissioner of Internal Revenue*, 279 U. S. 716. An intention to add to the rent in this manner is not lightly to be implied. The parties to the lease "did not provide, as they might have done, that the rental was in all events and at every hazard to be a net amount always available without diminution for any cause." *Boston & Providence Railroad* v. *Old Colony Railroad*, 269 Mass. 190, 197. Compare *European & North American Railway* v. *Maine Central Railroad*, 135 Maine, 338. And there is nothing in the lease indicating that the amount of the rent thereby reserved was fixed with relation to dividends or other payments to be made by the lessor, and thus disclosing an intention that such amount should always be "available [to the lessor] without diminution for any cause."

None of the cases previously decided in this Commonwealth goes to the extent of holding a lessee liable for the lessor's Federal income tax upon rent received under a tax covenant such as is here involved. Where the lessee has been held to such a liability there have been express covenants by the lessee to pay taxes "upon or in respect of the rent payable hereunder by the Lessee" (*Suter* v. *Jordan Marsh Co.* 225 Mass. 34) or "upon or against the rent payable hereunder" (*Kimball* v. *Cotting*, 229 Mass. 541, 542; *Kimball* v. *Cotting*, 234 Mass. 172, 173; *Kimball* v. *Maddison*, 286 Mass. 277, 279), except in *Pittsfield & North Adams Railroad* v. *Boston & Albany Railroad*, 260 Mass. 390, 394, 395–399, where it was provided that all "expenses" of the lessor — which had never been an operating company and merely maintained its corporate existence and received rent from the lessee — should be paid by the lessee, and, in view of the long continued interpretation of the lease by the parties, the word "expenses" was held to include the lessor's Federal income tax upon the rent received under the lease in question. This court, however, seems to have indicated in *Stony Brook Railroad* v. *Boston & Maine Rail-*

*road*, 260 Mass. 379, 383–384, that a lessee would be liable for the lessor's Federal income taxes upon rent received by the lessor under a lease whereby the lessee covenanted to pay taxes upon the income of the lessor. The present case does not fall within this principle for, as we interpret the lease now in question, the covenant of the lessee to pay taxes upon "the income therefrom," that is, from the demised property, is limited to the taxes, however assessed, upon income derived by the lessee from the use and operation of such property under the lease. The Circuit Court of Appeals, in *Whitlock* v. *Boston & Maine Railroad*, 29 Fed. (2d) 351, 353, held the lessee liable for the lessor's Federal income taxes on rent received by the lessor under a lease where such lessee had covenanted to pay "all taxes, assessments, and charges whatsoever" that might be imposed upon the lessor "on account of its property, franchise, capital stock, or otherwise," relying upon the word "otherwise" used in the covenant — a word that does not occur in the tax covenant now under consideration. While it has been said that the "rule prevalent in this Commonwealth is not so inelastic" as that stated in some of the cases in other jurisdictions (*Boston & Providence Railroad* v. *Old Colony Railroad*, 269 Mass. 190, 195), it is not to be stretched to impose a liability on the lessee in a case like the present.

The conclusion here reached is in accord with the decisions in *Catawissa Railroad* v. *Philadelphia & Reading Railway*, 255 Penn. St. 269, 276, and *Sharon Railway* v. *Erie Railroad*, 268 Penn. St. 396. In other cases in Pennsylvania where the lessee was held liable for Federal income taxes of the lessor, the tax covenant contained language specifically including taxes "upon the yearly payments herein agreed to be made," *North Pennsylvania Railroad* v. *Philadelphia & Reading Railway*, 249 Penn. St. 326, 327, or "on account of . . . earnings . . . or profits" of the lessor. *Philadelphia City Passenger Railway* v. *Philadelphia Rapid Transit Co.* 263 Penn. St. 561, 562. The lessor relies upon *Republic Building* v. *Gaertner*, 201 Ky. 509, 510, where the lessee covenanted to pay all taxes on "the income from said premises," and the cove-

nant was held to include Federal income taxes of the lessor.
The court apparently thought this language sufficient to
support the conclusion, but it receives strong support from
the further language of the covenant "it being the intent
of the parties that the lessor shall receive the aforesaid
rentals net and free from any sort of tax or deduction."
And there are other circumstances in the case tending to
support the conclusion. So far, however, as the case is
not distinguishable from the present case we cannot fol-
low it. See also *Terminal Investment Co.* v. *Pope Estate
Co.* 122 Cal. App. 281, 284, where there was a provision for
a "net income to the lessor . . . equal in amount to said
rents."

The case stated sets forth the practice of the parties with
respect to payment by the lessee of the lessor's Federal
income taxes. It is there stated that "For each year from
1909 to 1917 inclusive, the defendant paid the predeces-
sors of the plaintiff as Lessor under said lease on account
of Federal income taxes paid by the Lessor, a percentage
of the rental equal to the percentage imposed as a tax upon
the Lessor's net income by the Federal Statutes, namely, one
per cent of the rental paid in each of the years 1909 to 1915
inclusive; two per cent of the rental paid for the year 1916;
and six per cent of the rental paid for the year 1917," but
that for subsequent years no such payment was made.
There was no Federal income tax for the period between
1903 when the lease was executed and the year 1909 when
a Federal excise tax on corporations measured by their
income was imposed by the Revenue Act of 1909, Act of
August 5, 1909, 36 U. S. Sts. at Large, c. 6, § 38, page 112,
which was followed by a Federal income tax imposed in
1913 by the Revenue Act of 1913. Act of October 3, 1913,
38 U. S. Sts. at Large, c. 16, § 2, page 172. Obviously
there was no occasion for the parties to take action with
respect to Federal income taxes under the tax covenant
before 1909, and we think that the practical construction
given to this covenant by the parties during the period
from 1909 to 1917, but not continued thereafter, furnishes
no sufficient ground for a different interpretation of said

covenant from that which we reach upon an examination of its language in the light of the lease as a whole. Compare *Pittsfield & North Adams Railroad* v. *Boston & Albany Railroad*, 260 Mass. 390, 393–394, 397–398.

In accordance with the terms of the report judgment is to be entered for the defendant.

*So ordered.*