UNITED SHOE MACHINERY CORPORATION *vs.* GALE SHOE MANUFACTURING COMPANY.

Suffolk. May 1, 1939. — June 28, 1943.

Present: FIELD, C.J., QUA, DOLAN, & RONAN, JJ.

*Landlord and Tenant,* Covenant to pay taxes, Construction of lease. *Taxation,* Corporate excise. *De Minimis non curat Lex. Words,* "Tax," "Excise."

This court considered a case although the amount in controversy was but fifty-five cents, where the question involved was the construction of a contract between the plaintiff and the defendant and counsel for the plaintiff asserted the existence of numerous similar contracts between the plaintiff and others giving rise to the same question.

The pecuniary burden imposed on a foreign corporation by G. L. (Ter. Ed.) c. 63, § 39, as amended, is an excise and is too remote from the property of the corporation to constitute a tax "upon or in respect to" its property.

The language of a provision of a lease of machinery drawn by the lessor, a foreign corporation doing business in Massachusetts, that the lessee should "pay all taxes and assessments which shall be assessed upon or in respect to the leased machinery or any interest therein or the rights to payments thereunder upon whomsoever the same shall be assessed," did not require the lessee to pay any part of the excise imposed on the lessor by G. L. (Ter. Ed.) c. 63, § 39, as amended, after the enactment of St. 1936, c. 362, had exempted the machinery from the local tax theretofore assessed upon it and paid by the lessee and thus had increased such excise upon the lessor by depriving it of the right to deduct the value of the machinery in computing the corporate excess.

CONTRACT. Writ in the Superior Court dated June 1, 1938.

The case was heard by *Hanify,* J.

*P. Nichols,* for the plaintiff.

*J. N. Clark,* for the defendant.

FIELD, C.J. This action of contract brought in the Superior Court to recover the sum of fifty-five cents and interest thereon was heard upon a demurrer to the declaration. The demurrer stated five grounds of demurrer including the ground that the declaration "fails to state substantive facts

necessary to constitute the cause of action alleged." The demurrer was sustained and the plaintiff appealed. G. L. (Ter. Ed.) c. 231, § 96.

The amount in controversy would not warrant consideration of the plaintiff's appeal if no substantial right was at stake. *Feeney* v. *Eastern Racing Association, Inc.* 303 Mass. 602, 603, and cases cited. See *A. Doykos & T. Pappas, Inc.* v. *Leventhal*, 290 Mass. 375, 376–377. The defendant, however, does not raise the point. And counsel for the plaintiff assures us that the question involved in the present case is a matter of substantial interest to the plaintiff by reason of the existence of numerous agreements to which it is a party similar in form and effect to the agreement upon which the action is brought. Consequently we consider the case.

The plaintiff's declaration alleges that "it is a manufacturing corporation duly organized under the laws of the State of New Jersey and at all times hereinafter mentioned was engaged in manufacture in this Commonwealth and had a principal place of business in Boston in the County of Suffolk and Commonwealth of Massachusetts, and that the defendant is a manufacturing corporation duly organized under the laws of the Commonwealth of Massachusetts and at all times hereinafter mentioned was engaged in manufacture in this Commonwealth and had a principal place of business in North Adams in the County of Berkshire and Commonwealth of Massachusetts; that the plaintiff for many years prior to 1936 paid to the Commonwealth of Massachusetts, under the provisions of G. L., Chap. 63, a tax on corporate excess and that in calculating its corporate excess it was allowed a deduction for machinery owned by it and leased to divers corporations including the defendant for use in manufacturing in this Commonwealth; that the machinery so leased was taxed under the provisions of G. L. Chap. 59 by the Massachusetts city or town in which the same was located and that under the provisions of the leases relating to such machinery the taxes locally assessed thereon were paid by the respective corporate lessees including defendant; that by the enactment

of Chap. 362 of the Acts of 1936 such machinery ceased to be subject to taxation under the provisions of G. L., Chap. 59, and also ceased to be deductible in calculating the corporate excess under the provisions of Chap. 63; that by the provisions of Chap. 397 of the Acts of 1936 there was added to the tax on corporate excess imposed by G. L., Chap. 63 as amended by Secs. 6 and 7 of Chap. 362 of the Acts of 1936, an additional tax equal to 10% of the amount of said tax on corporate excess; that as a result of the enactment of Chaps. 362 and 397 of the Acts of 1936 the plaintiff, in the calculation of its corporate excess under the provisions of G. L., Chap. 63 as amended by said Acts, no longer received a deduction for its leased machinery with the result that its total tax on corporate excess in 1936 · was thereby higher to the extent of $5.50 for each thousand dollars of value of leased machinery than it would have been had Chaps. 362 and 397 of the Acts of 1936 not been enacted, but no tax was assessed to the defendant or otherwise upon or in respect to the leased machinery or interest therein as such; that on December 4, 1930, the plaintiff entered into an agreement with the defendant for consideration in writing and under seal . . . under the terms of which the plaintiff leased to, and licensed the defendant under its patents to use, a Universal Slugging Machine, No. 5202, the property of the plaintiff, having a value of $100, which machine the defendant in 1936 used in the Commonwealth for manufacturing purposes; that under said lease the defendant covenanted and agreed among other things 'at all times until redelivery of the leased machinery to the United Corporation (meaning thereby the plaintiff) the Licensee (meaning thereby the defendant) shall pay all taxes and assessments which shall be assessed upon or in respect to the leased machinery or any interest therein or the rights to payments thereunder upon whomsoever the same shall be assessed'; that said machine was included by the plaintiff in its 1936 tax return filed with the Commissioner of Corporations and Taxation of the Commonwealth of Massachusetts at a valuation of $100 in its schedule of assets upon the basis of which its cor-

porate excess was computed; that the plaintiff has performed all of its covenants in said lease contained but that the defendant has failed to perform its covenant to pay all taxes and assessments which shall be assessed upon or in respect to the leased machinery in that it has neglected and refused (though requested so to do) to reimburse the plaintiff to the extent of fifty-five cents, said sum being the amount [by] which on account of the value of said machine the plaintiff's tax on corporate excess was in 1936, under the provisions of G. L., Chap. 63 as amended by Secs. 6 and 7 of Chap. 362 of the Acts of 1936 and as amended by Secs. 1 and 5 of Chap. 397 of the Acts of 1936, greater than such tax on corporate excess would have been under the provisions of G. L., Chap. 63 if the same had not been amended by Chaps. 362 and 397 of the Acts of 1936; and which sum the plaintiff has paid to the Commonwealth. WHEREFORE the defendant owed the plaintiff the sum of fifty-five cents with interest from October 20, 1936, the date on which interest on said tax on corporate excess began to run against the plaintiff in favor of the Commonwealth of Massachusetts."

The demurrer admits only facts well pleaded and does not admit inferences from those facts unless they are necessary inferences, nor does it admit conclusions of law from facts averred. *Johnson* v. *East Boston Savings Bank*, 290 Mass. 441, 446–447.

Fundamental facts alleged by the declaration and admitted by the demurrer are that the plaintiff is a foreign manufacturing corporation; that during the year 1936 it was engaged in manufacturing within the Commonwealth; that the plaintiff was then the owner of a machine of the value of $100 which by an agreement for a consideration and under seal it had leased in 1930 to the defendant, a domestic manufacturing corporation engaged in manufacturing in this Commonwealth, and which was being used in 1936 by the defendant for manufacturing within the Commonwealth; and that by the lease the defendant covenanted and agreed, among other things, that "at all times until redelivery of the leased machinery to the . . . [plain-

tiff] the . . . [defendant] shall pay all taxes and assessments which shall be assessed upon or in respect to the leased machinery or any interest therein or the rights to payments thereunder upon whomsoever the same shall be assessed."

On the facts above stated the plaintiff was subject in the year 1936 to the excise imposed by G. L. (Ter. Ed.) c. 63, § 39, as amended by St. 1936, c. 362, § 6, which, so far as material, is as follows: "Except as otherwise provided herein, every foreign corporation shall pay annually, with respect to the carrying on or doing of business by it within the commonwealth, an excise equal to the sum of the following, provided that every such corporation shall pay annually a total excise not less in amount than one twentieth of one per cent of such proportion of the fair value of its capital stock as the assets, both real and personal, employed in any business within the commonwealth on the day fixed for determination of the value of the corporate excess employed within the commonwealth bear to the total assets of the corporation employed in business on said date: (1) An amount equal to five dollars per thousand upon the value of its corporate excess employed by it within the commonwealth or five dollars per thousand upon the value of such of its tangible property situated in the commonwealth on said day as is not subject to local taxation, whichever is higher. (2) An amount equal to two and one half per cent of its net income determined to be taxable in accordance with the provisions of this chapter."

General Laws (Ter. Ed.) c. 63, § 30 (4), as appearing in St. 1934, c. 237, § 1 (see now St. 1939, c. 24, § 6), defined the term "Corporate excess employed within the commonwealth" (as used in G. L. [Ter. Ed.] c. 63, §§ 30–52, inclusive) by a foreign corporation, so far as here material, as "such proportion of the fair value of its capital stock on the last day of the taxable year as defined in paragraph six of this section, as the value of the assets, both real and personal, employed in any business within the commonwealth on that date, after deducting therefrom the value of (a) and (b) following, bears to the value of the total

assets of the corporation on said date: (a) Works, structures, real estate, motor vehicles, machinery, poles, underground conduits, wires and pipes owned by it within the commonwealth subject to local taxation, except such part of said real estate as represents the interest of a mortgagee. (b) . . . [Certain nontaxable securities]."

General Laws (Ter. Ed.) c. 63, § 31, provided that in "determining . . . the corporate excess employed within the commonwealth by a foreign corporation, the surplus and undivided profits shall be included in estimating the value of the capital stock, and there shall not be deducted" the value of certain described securities and certain debts.

On the facts above recited the plaintiff was also subject in the year 1936 to the temporary additional tax imposed by St. 1936, c. 397, of ten per cent of the excise imposed upon the plaintiff by G. L. (Ter. Ed.) c. 63, § 39, as amended.

While the fact is not alleged in specific terms, we treat the declaration as alleging that the plaintiff was assessed in 1936 an excise "with respect to the carrying on or doing of business by it within the commonwealth," one element of which was an "amount equal to five dollars per thousand upon the value of its corporate excess employed by it within the commonwealth," referred to in G. L. (Ter. Ed.) c. 63, § 39, as amended, and was also assessed under St. 1936, c. 397, an additional tax of ten per cent of such amount. The declaration, however, alleges that the plaintiff has paid to the Commonwealth the sum of fifty-five cents. It is apparent that this sum is an amount equal to $5 per $1,000 upon the value ($100) of the machine leased by the plaintiff to the defendant and an additional ten per cent of this amount. The contention of the plaintiff is that this sum of fifty-five cents was a part of the excise assessed upon the plaintiff as above set forth and constituted a tax or assessment "upon or in respect to" the machine valued at $100 leased by the plaintiff to the defendant within the meaning of the covenant in the lease so that the plaintiff is entitled to recover this sum of fifty-five cents in this action.

The decision of this case depends upon an interpretation

of this covenant in the lease. Since the lease was made in 1930, the parties thereto had no knowledge at the time it was made that the plaintiff would be subject in 1936 to an excise in the precise form of the excise imposed by G. L. (Ter. Ed.) c. 63, § 39, as amended by St. 1936, c. 362, § 6, or to the additional ten per cent tax imposed by St. 1936, c. 397. It is alleged in the declaration that "the plaintiff for many years prior to 1936 paid to the Commonwealth of Massachusetts, under the provisions of G. L., Chap. 63, a tax on corporate excess and that in calculating its corporate excess it was allowed a deduction for machinery owned by it and leased to divers corporations including the defendant for use in manufacturing in this Commonwealth; that the machinery so leased was taxed under the provisions of G. L. Chap. 59 by the Massachusetts city or town in which the same was located and that under the provisions of the leases relating to such machinery the taxes locally assessed thereon were paid by the respective corporate lessees including defendant." So far as these allegations are allegations of fact with respect to the payment of taxes, they are to be taken as true. And we assume for the purposes of this case, without minute analysis of the statutes in force prior to 1936, that the taxes paid as alleged were computed in accordance with existing statutory requirements and were paid by the corporations liable respectively for such taxes under those requirements. Obviously neither the plaintiff nor the defendant knew when the lease was made in 1930 that by amendment of G. L. (Ter. Ed.) c. 59, §§ 5, 18, by St. 1936, c. 362, §§ 1, 2, the machinery leased would be rendered exempt from local taxation and consequently not deductible in determining the corporate excess employed within the Commonwealth by the plaintiff under G. L. (Ter. Ed.) c. 63, § 30 (4), as appearing in St. 1934, c. 237, § 1. "It must be presumed that the lease in question was drafted in view of the general fund of knowledge of the time." *Boston & Providence Railroad* v. *Old Colony Railroad,* 269 Mass. 190, 196. "We cannot speculate as to what the parties might have said by their contract if, at the time of its execution, the present taxation situation had been

directly brought to their attention. We can construe the contract only as they actually made it." *Stony Brook Railroad* v. *Boston & Maine Railroad*, 260 Mass. 379, 386. The covenant in the lease does not necessarily mean that the taxation situation as between the plaintiff and the defendant was to remain the same irrespective of statutory changes. Whether such a result is effected in any year — so far as the present case is concerned in the year 1936 — depends upon the correct interpretation of the covenant in the lease in its application under the governing statutes in force in that year. And if the language of the covenant correctly interpreted is broad enough to cover a situation created by statutes enacted after the lease was made, it is immaterial that the mode of taxation prescribed by such statutes came into existence after the lease was made. *Kimball* v. *Cotting*, 234 Mass. 172, 173. *Eastern Massachusetts Street Railway* v. *Boston Elevated Railway*, 310 Mass. 659, 668. But where, as here, it is sought to shift the burden of taxation from the person upon whom it is imposed by statute, the intention of the parties to accomplish that result must clearly appear. *Pittsfield & North Adams Railroad* v. *Boston & Albany Railroad*, 260 Mass. 390, 397. Moreover, the allegations of the declaration — and the assurance of counsel for the plaintiff as to the existence of similar leases — naturally import that the lease was drawn by the plaintiff, the lessor. At least, no intendment to the contrary can be made. *Pollock* v. *New England Telephone & Telegraph Co.* 289 Mass. 255, 258. If, therefore, the language of the lease is "doubtful or uncertain and the intention of the parties cannot be ascertained from its terms," it must be construed most strongly against the plaintiff. See *Schaffer* v. *Hotel & Railroad News Co.* 266 Mass. 276, 277.

The covenant in the lease relates to "all taxes and assessments" described therein. General Laws (Ter. Ed.) c. 63, § 39, as amended, however, imposed upon the plaintiff an "excise" under the authority conferred by the Constitution of the Commonwealth upon the General Court "to impose and levy, reasonable duties and excises" rather than under the authority so conferred "to impose and levy

proportional and reasonable assessments, rates, and taxes." Constitution, Part II, c. 1, § 1, art. 4. The pecuniary burden so imposed "is not a tax on tangible. or other property. It is not an income tax. It is measured by property and net income fairly attributable to the business done within the Commonwealth. It is an excise for the commodity or privilege of having a place for the transaction of intrastate business in Massachusetts with the protection of our laws and the financial, commercial and other advantages appertaining thereto." *Atlantic Lumber Co.* v. *Commissioner of Corporations & Taxation,* 292 Mass. 51, 53; affirmed 298 U. S. 553. See also *Commissioner of Corporations & Taxation* v. *Ford Motor Co.* 308 Mass. 558, 563–564. The plaintiff is seeking in this action to recover from the defendant a part of this "excise" under a covenant providing for payment by the defendant to the plaintiff of "all taxes and assessments" described in the covenant.

"'Tax' in some connections is a word of comprehensive meaning and may include excises as well as a pecuniary burden laid directly on property. The Legislature has sometimes designated an excise as a tax and nothing more. . . . Many of the revenue exactions made by the Commonwealth from corporations, which have been upheld as excises, were named in the statutes a tax and not an excise." *Eaton, Crane & Pike Co.* v. *Commonwealth,* 237 Mass. 523, 527–528. See also *Commissioner of Insurance* v. *Commonwealth Mutual Liability Ins. Co.* 308 Mass. 385, 387. Indeed, the ten per cent additional pecuniary burden imposed by St. 1936, c. 397, constituting a part of the amount that the plaintiff seeks to recover in this action, is described as a "tax," though obviously it is of the same nature as the "excise" imposed by G. L. (Ter. Ed.) c. 63, § 39, as amended, to which it is an addition. In view, therefore, of the not uncommon use of the word "tax" in a comprehensive sense broad enough to include an "excise," the use by the parties in the covenant of the word "taxes" and the failure to use the word "excises" are not necessarily conclusive that the covenant was not intended to apply to "excises." But they are of some weight. "Excises" were not unfamiliar at

the time the lease was made. "The name was at hand if the parties had wanted to use it. Some experience also was available." *Boston & Providence Railroad* v. *Old Colony Railroad*, 269 Mass. 190, 196. If it was the purpose of the parties to the lease to include excises in the covenant, it would have been simple to use that word (see *Stony Brook Railroad* v. *Boston & Maine Railroad*, 260 Mass. 379, 384; *Eastern Massachusetts Street Railway* v. *Boston Elevated Railway*, 310 Mass. 659, 670) as has sometimes been done. See *Kimball* v. *Cotting*, 229 Mass. 541, 542; *Kimball* v. *Cotting*, 234 Mass. 172, 173; *Kimball* v. *Maddison*, 286 Mass. 277, 279. Moreover, it is not without significance that the parties, presumably designedly, did not use merely the word "taxes" which was susceptible of a broad meaning but added the word "assessments" so as to follow closely, though not precisely, the language of the constitutional authorization for the imposition of "assessments, rates, and taxes" in which the words are used in a more limited and technical sense and do not include "excises." Furthermore, the words in the covenant descriptive of the subjects of the "taxes and assessments" therein referred to more naturally describe subjects of "taxes and assessments" in the limited and technical sense than subjects of "excises" that might be included within the more comprehensive meaning of the word "taxes." The subjects described in the covenant are property, "the leased machinery or any interest therein or the rights to payments thereunder," and property as such cannot be the subject of an "excise." *Opinion of the Justices*, 195 Mass. 607, 614; 220 Mass. 613, 626. *Perkins* v. *Westwood*, 226 Mass. 268, 276. The natural significance of a covenant to pay taxes on property is to pay "taxes levied because of ownership." *Stony Brook Railroad* v. *Boston & Maine Railroad*, 260 Mass. 379, 384. "The mere right to hold and own" property such as is referred to in the covenant "cannot be made the subject of an excise." *Opinion of the Justices*, 220 Mass. 613, 626. The plaintiff, however, relies on the fact that the "taxes and assessments" referred to in the covenant are those "assessed" not only "upon" but also "in respect to" the

property therein described. But in *Codman* v. *American Piano Co.* 229 Mass. 285, 291, where the covenant was to pay "all taxes and assessments whatsoever" "for or in respect of the leased premises," it was said that it "may readily be conceded that a tax 'on' or 'for' or 'in respect of' leased premises means the same thing, and that no sound distinction exists between them," and that the "legal signification" of "taxes for or 'in respect of' the leased premises" is that "the taxes are those which relate directly to the premises themselves."

The cases heretofore decided by this court have related to Federal income taxes on rent of leased property. In *Codman* v. *American Piano Co.* 229 Mass. 285, it was held that the covenant therein above described did not require the lessee to pay Federal income taxes imposed upon the lessor upon the rent of those premises. See also *Greenburg* v. *Bopp*, 251 Mass. 433; *Stony Brook Railroad* v. *Boston & Maine Railroad*, 260 Mass. 379; *Nashua & Lowell Railroad* v. *Boston & Maine Railroad*, 260 Mass. 387; *Boston & Providence Railroad* v. *Old Colony Railroad*, 269 Mass. 190; *Eastern Massachusetts Street Railway* v. *Boston Elevated Railway*, 310 Mass. 659. Where a different result has been reached, "rent" has been expressly mentioned in the covenant as the subject of the taxes to be paid (*Suter* v. *Jordan Marsh Co.* 225 Mass. 34; *Kimball* v. *Cotting*, 229 Mass. 541; *Kimball* v. *Cotting*, 234 Mass. 172; *Kimball* v. *Maddison*, 286 Mass. 277) or some word has been used naturally meaning or including rent. *Pittsfield & North Adams Railroad* v. *Boston & Albany Railroad*, 260 Mass. 390. It has been intimated that such a result could be attained without the use of the word "rent" if taxes upon "income" of the lessor were referred to. *Boston & Providence Railroad* v. *Old Colony Railroad*, 269 Mass. 190, 195. *Eastern Massachusetts Street Railway* v. *Boston Elevated Railway*, 310 Mass. 659, 670.

The decisions that covenants to pay "taxes" "upon," "on," "for," "in respect of" or "on account of" leased property do not include a tax upon the "rent" of such property received by the lessor furnish some indication that

such covenants do not include an "excise" such as is here involved imposed upon the lessor "with respect to the carrying on or doing of business by it within the commonwealth." Neither such a tax nor such an "excise" is imposed directly upon the leased property. Each is somewhat remote from the leased property, although either, as a practical matter, might be regarded as imposing some pecuniary burden upon the owner of the leased property by reason of the ownership thereof.

Real estate within the Commonwealth (G. L. [Ter. Ed.] c. 59, §§ 2, 3) and also certain tangible property (G. L. [Ter. Ed.] c. 59, § 4), with certain exceptions (G. L. [Ter. Ed.] c. 59, § 5), are subject to local property taxation. Property the income of which is taxable under the income tax law or would be taxable thereunder if it yielded income is exempt from the local property tax. G. L. (Ter. Ed.) c. 59, § 5, Twenty-seventh. Obviously this particular exemption is for the purpose of avoiding what in effect would be double taxation. Rents of real estate are not taxable as income of an individual (G. L. [Ter. Ed.] c. 62, § 1), obviously because such real estate is taxed directly, and a tax on the rents would in effect amount to double taxation. And this principle is carried further by excluding, from the taxation of interest, interest on "Loans secured exclusively by duly recorded mortgage of real estate, taxable as real estate, situated in the commonwealth, to an amount not exceeding the assessed value of the mortgaged real estate less the amount of all prior mortgages" (G. L. [Ter. Ed.] c. 62, § 1 [a] Third), and by providing for a deduction from business income of an "amount equal to five per cent of the assessed value, less the amount of all mortgages thereon, of the stock in trade and other tangible property, real and personal . . . [with exceptions not here material] owned by the person taxed and used or employed in the profession, employment, trade or business within the commonwealth." G. L. (Ter. Ed.) c. 62, § 6 (g), as amended by St. 1935, c. 436, § 1. But the careful avoidance of what is in effect double taxation does not mean that a tax upon income, in the form of rent or otherwise, is fairly within the descrip-

tion of taxes "upon or in respect to" the property from which rent is derived in a covenant for the payment of such taxes. Clearly, as has been decided, a Federal income tax upon rent, which has been regarded as an "excise," is not within such a description. *Codman* v. *American Piano Co.* 229 Mass. 285, 289. *Stony Brook Railroad* v. *Boston & Maine Railroad,* 260 Mass. 379, 385–386. See *Kimball* v. *Cotting,* 229 Mass. 541, 543–544; *Hart* v. *Tax Commissioner,* 240 Mass. 37, 39.

It is true that this court has said that the "income tax established by our laws is a tax on property and not an excise tax" (*Harrison* v. *Commissioner of Corporations & Taxation,* 272 Mass. 422, 427), and that a "tax upon the income of property is in reality a tax upon the property itself. Income derived from property is also property. Property by income produces its kind, that is, it produces property and not something different. It does not matter what name is employed. The character of the tax cannot be changed by calling it an excise and not a property tax. In its essence a tax upon income derived from property is a tax upon the property." *Hart* v. *Tax Commissioner,* 240 Mass. 37, 39. See *Opinion of the Justices,* 220 Mass. 613, 624. But in *Stony Brook Railroad* v. *Boston & Maine Railroad,* 260 Mass. 379, 384–385, where a covenant to pay taxes on property was involved, it was said in holding that the covenant did not include Federal income taxes that the "distinction between taxes on property and taxes on income is well established. The tax on the rental received from property is not the same as a tax on the property itself. An assessment upon income is an assessment upon a subject different from a tax upon property." The implication is plain that the Massachusetts income tax — though a property tax — is not a tax "upon or in respect to" the property from which such income is derived within the meaning of a covenant to pay such taxes.

The pecuniary burden imposed upon the plaintiff by G. L. (Ter. Ed.) c. 63, § 39, as amended, is clearly an "excise." Such an "excise" imposed upon a corporation is too remote from the property of the corporation to con-

stitute a tax "upon or in respect to" the property of the corporation within the meaning of a covenant to pay such taxes if a Federal income tax, in its nature an "excise," or a State income tax, in its nature a property tax, upon rent of leased property is too remote from such property to be a tax "upon or in respect to" such property, within the meaning of such a covenant, in the absence, as here, of any other indication of an intention of the parties to the lease that the covenant therein shall apply to an "excise" such as is here involved.

The substance of the plaintiff's contention is that its property, including the leased machinery, is reached for taxation indirectly by an "excise" imposed upon it "with respect to the carrying on or doing of business by it within the commonwealth." See *Eastern Massachusetts Street Railway* v. *Boston Elevated Railway*, 310 Mass. 659, 669. Undoubtedly such an excise imposed upon a corporation may to some extent be a "medium of reaching for taxation" the property of the corporation. *Eastern Massachusetts Street Railway* v. *Boston Elevated Railway*, 310 Mass. 659, 669. That this may be the effect of an "excise" upon a corporation has been recognized as a ground for exemption from local property taxation of property of a corporation subject to an excise for the purpose of avoiding double taxation. Thus it was said in *Opinion of the Justices,* 195 Mass. 607, 611: "If a reasonable excise tax is lawfully imposed upon a corporation, according to the amount of its property or business, it is in the power of the Legislature, for the purpose of avoiding double taxation, to exempt its property held and used in the business for which the excise tax is paid, and to exempt the stockholders, or owners of the beneficial interest in this property, from liability to a property tax upon it." See also *Opinion of the Justices,* 261 Mass. 523, 545. And an "excise" upon a corporation may bear so directly upon property of the corporation as to be subject to constitutional objections on the ground that in effect it taxes property that is not subject to the taxing power of the State. See *Connecticut General Life Ins. Co.* v. *Johnson*, 303 U. S. 77, 80–81. No such constitutional

question, however, is here presented.  It is not always easy to determine where the ultimate burden of a tax or excise falls.  But the narrow language of the covenant here in question — similar to language that has been interpreted and applied in relation to income taxes upon rent — does not disclose an intention of the parties that the lessee shall bear all the burdens of taxation in any form that might be thought to fall more or less indirectly upon machinery owned by the plaintiff and leased to the defendant.

Doubtless, as the situation was treated before the amendment of G. L. (Ter. Ed.) c. 63, § 39, by St. 1936, c. 362, § 6, the governing statute might have provided that the plaintiff's machinery, including the leased machinery here in question, should be subject to the local property tax and for the purpose of avoiding double taxation its value deducted in determining the value of the corporate excess of the corporation employed within the Commonwealth.  This object of avoiding double taxation, however, might also be accomplished constitutionally, as it was by St. 1936, c. 362, §§ 1, 2, by rendering such machinery exempt from the local property tax and not permitting deduction of its value in determining the corporate excess.  Though this exemption is permissible for the purpose of avoiding double taxation, it does not follow that the "excise," in the determination of the amount of which the leased machinery is an element, is a tax "upon or in respect to" the leased machinery within the meaning of the covenant.  Indeed, the following analysis of the statute relating to the "excise" shows that the relation between the "excise" and the leased machinery is very remote.

(a) The "excise" is not imposed directly upon property of the corporation but is imposed rather upon its "commodity or privilege" of "carrying on or doing . . . business" within the Commonwealth.  § 39.

(b) There are several prescribed measures of this "commodity or privilege," but as applied to the plaintiff there is a combined measure consisting of two elements: (1) net income, and (2) "the value of its corporate excess employed by it within the commonwealth."  § 39.  The first of

these elements, however, is not involved in the present case.

(c) The value of such corporate excess is a "proportion of the fair value" of the "capital stock" of the corporation. § 30 (4). This language was substituted by St. 1927, c. 258, § 1, for the phrase "proportion of the fair cash value of all the shares constituting the capital stock" of the corporation (see G. L. c. 63, § 30 [4]), a phrase in which "all the shares constituting the capital stock" means "shares outstanding in the hands of the shareholders." *Commissioner of Corporations & Taxation* v. *Boston Edison Co.* 310 Mass. 674, 680, 687. If this change in phrase effected no change in meaning and "capital stock" in the present statute means the same as "all the shares constituting the capital stock" in the previous statute, there might be a great difference between the "fair value" of the "capital stock" in this sense and the value of the property of the corporation. "The price for which all the shares would sell may greatly exceed the aggregate of the corporate property, or it may fall very far short of it." *Commonwealth* v. *Hamilton Manuf. Co.* 12 Allen, 298, 302. As was said in *Commonwealth* v. *Cary Improvement Co.* 98 Mass. 19, 22, "the property held by a corporation does not furnish a proper measure of the value of its capital stock regarded as a franchise." See *Commissioner of Corporations & Taxation* v. *Boston Edison Co.* 310 Mass. 674, 693. But even if the change in the phrase of the statute changed its meaning so that the value of the "capital stock" is not to be considered from the standpoint of the shareholders but is to be considered rather from the standpoint of the corporation, "the fair value of its capital stock" may be very different from the value of its corporate property. The Legislature in making this change in the language of G. L. c. 63, § 30 (4), by St. 1927, c. 258, § 1, and also a change in G. L. c. 63, § 31, by St. 1927, c. 258, § 2, whereby it was provided that, in determining the corporate excess employed within the Commonwealth by a foreign corporation, "the surplus and undivided profits shall be included in estimating the value of the capital stock," followed closely the language of

the Federal capital stock tax.  Revenue Act of 1918,. c. 18, § 1000, 40 U. S. Sts. at Large, 1057, 1126.  Revenue Act of 1921, c. 136, § 1000, 42 U. S. Sts. at Large, 227, 294. Revenue Act of 1924, c. 234, § 700, 43 U. S. Sts. at Large, 253, 325.  In *Ray Consolidated Copper Co.* v. *United States,* 268 U. S. 373, 376–377, the court said of the capital stock tax imposed by the Revenue Act of 1918: "The tax is a special excise imposed on the privilege of carrying on business in the form of a corporation. . . . [Congress] declared that the tax should be measured by the 'fair average value of its [the corporation's] capital stock.'  In so doing, it used a term which has no fixed meaning in taxing statutes and it gave no directions for ascertaining such value, except that in 'estimating' value 'the surplus and undivided profits shall be included.'  As the term capital stock has no fixed significance, it must be construed in a particular statute by reference to the context, the nature and purpose of the statute, its history and other aids to construction.  We think that, as here used, it means the entire potentiality of the corporation to profit by the exercise of its corporate franchise. . . . The capital stock of a corporation, its net assets, and its shares of stock are entirely different things. . . . The value of one bears no fixed or necessary relation to the value of the other."  No interpretation more favorable to the plaintiff can be given to the Massachusetts statute now under consideration than was given in the *Ray Consolidated Copper Co.* case to the Federal capital stock tax law.  Under the Massachusetts statute the "capital stock of a corporation" and "its net assets" are entirely different things.  And obviously the gross assets of a corporation may differ to an even greater extent than the net assets from the "capital stock" by reason of the liabilities of the corporation.  The leased machinery here in question is brought no nearer to the "capital stock" of the corporation than as a part of the gross assets of the corporation, and no reason appears why a ratable part of these liabilities should not be set against the value of the leased machinery.  Therefore, even if the value of the "capital stock" and the value of the net assets of the corporation were the

same — as they would not necessarily be — the leased machinery in question included in the gross assets of the corporation would not necessarily be represented in the "capital stock" of the lessor at the value of $100. If regarded as represented therein at all, it might be at a very much smaller value. Other possible divergencies need not be discussed.

(d) The governing statute as applied to the "excise" here in question deals directly with property of a corporation only in the provision that the "corporate excess employed within the commonwealth" by a foreign corporation, with exceptions not here material, shall be "such proportion of the fair value of its capital stock . . . as the value of the assets, both real and personal, employed in any business within the commonwealth . . . [with certain deductions], bears to the value of the total assets of the corporation . . . ." § 30 (4). Under this provision the assets of a foreign corporation constitute a measure of the "excise" and not the subject thereof. Though the application of this measure undoubtedly is a reasonable method of determining the extent to which a foreign corporation shall be subject to taxation within the Commonwealth (see *National Leather Co.* v. *Commonwealth,* 256 Mass. 419, affirmed 277 U. S. 413; *Atlantic Lumber Co.* v. *Commissioner of Corporations & Taxation,* 292 Mass. 51, affirmed 298 U. S. 553; *Southern National Gas Corp.* v. *Alabama,* 301 U. S. 148, 156–157), it does not necessarily result in fixing as the value of "the corporate excess employed within the commonwealth" by a foreign corporation, based upon its "capital stock," subject to an "excise" at the rate of $5.50 (including the ten per cent additional) per $1,000, a value equivalent to the value of the total assets of the corporation employed in business within the Commonwealth, with certain deductions, or in allocating to each specific asset included in these total assets, such as the leased machinery here in question, a part of the "excise" equivalent to $5.50 per $1,000 upon the value of such specific asset. There may be intangible elements affecting the value of the "capital stock" of a corporation allocated to this Commonwealth, in accord-

ance with the statutory provisions, as its "corporate excess employed within the commonwealth" that render such corporate excess of much greater value than the total assets of the corporation employed in business in the Commonwealth after making the statutory deductions. The governing statute does not contemplate any fixed relation between the "excise" imposed upon a foreign corporation and its total assets employed within the Commonwealth or any specific asset, such as the leased machinery here in question, included in these assets. The relation between them, as the analysis of the governing statute demonstrates, in the case of each corporation would depend upon the whole financial situation of the corporation and would be little more than a comparison of figures with only a remote logical connection. Clearly it cannot be said upon the allegations of the declaration that the "excise" here in question reaches the leased machinery for the purpose of taxation at the rate of $5.50 per $1,000 upon its value of $100 if it reaches it at all.

Doubtless the declaration is not bad upon demurrer merely because the allegations of fact therein do not support a claim for damages in the precise amount alleged in the declaration. The allegation of the amount of damages is merely a conclusion of law. *Frisbee* v. *Prussian National Ins. Co.* 223 Mass. 159, 161. Moreover, if a tax is of such a nature as to be within the scope of a lessee's covenant to pay taxes, it is not fatal to recovery by the lessor that it has paid a single gross amount greater than, but including, the tax that the lessee has covenanted to pay and that a more or less complicated analysis and computation is required to determine the part of this gross amount properly apportionable to the lessee. See *Kimball* v. *Maddison*, 286 Mass. 277, 281. But that is not this case.

Where, as here, the "excise," a part of which the plaintiff, the lessor, seeks to recover from the defendant, the lessee, under a covenant to pay taxes "assessed upon or in respect to" the leased property, considered in accordance with its true nature, is not a tax on property (see *Eastern Massachusetts Street Railway* v. *Boston Elevated Railway*,

310 Mass. 659, 669) and bears so remote a relation to the leased property as the foregoing analysis of the governing statute discloses, the covenant in the narrow form in which it is drawn, in the absence of any significant aid to its interpretation other than its language, cannot rightly be interpreted as disclosing an intention of the parties thereto that the lessee shall pay any part of the "excise" imposed upon the corporation, the lessor, on the theory that such "excise" is "a medium of reaching for taxation the property of the lessor," including the leased property. See *Eastern Massachusetts Street Railway* v. *Boston Elevated Railway*, 310 Mass. 659, 669. The cases interpreting covenants for the payment of taxes by lessees, previously decided by this court and cited earlier in this opinion, while different in their facts from the present case, tend to support the conclusion here reached, and furnish no support for the broader interpretation of the covenant urged by the plaintiff.

*Order sustaining demurrer affirmed.*
*Judgment for the defendant.*