## Gulf Oil Corporation v. Middletown Area School District

*Edward Becker* and *George Shaffer, Jr.,* for plaintiffs.

*Paul E. Clouser,* for defendant.

HERMAN, J., December 29, 1969.—This matter is before the chancellor for adjudication after a complaint in equity was filed by Gulf Oil Corporation (hereinafter referred to as "Gulf"), and the Pennsylvania Turnpike Commission (hereinafter referred to as "commission"), seeking to enjoin Middletown Area School District (hereinafter referred to as "school district") from enforcing any of the provisions of a tax upon the privilege of leasing tax-exempt real estate and to declare the resolution unlawful and void as to plaintiffs; which resolution had been enacted by the school district on May 5, 1969. The school district answered the complaint and testimony was taken before the chancellor. Preliminary objections which had previously been filed were withdrawn, as was plaintiffs' request for a preliminary injunction.

The facts[1] as admitted by the pleadings and as found from the testimony are these:

Plaintiff, Gulf Oil Corporation, is a Pennsylvania corporation which, among other things, refines and markets gasoline, lubricants and similar products and in furtherance of these activities owns, manages and leases automobile service stations throughout the United States. The Pennsylvania Turnpike Commission is an instrumentality of the Commonwealth of

---

[1] Pursuant to Pa. R. C. P. 1517, as amended, effective September 1, 1969, the facts will be set down in narrative form rather than in specific findings.

Pennsylvania, created by Act of May 21, 1937, P. L. 774, sec. 4, 36 PS §652d. The commission operates and maintains a turnpike which extends from the Delaware River to the Ohio State line, a distance of 359.3 miles, and which passes through the Middletown Area School District.

Defendant, Middletown Area School District, is a third class school district comprised of the Boroughs of Middletown and Royalton, and the Township of Lower Swatara, all in Dauphin County.

Gulf leases from the commission a certain piece of ground owned by the commission situate on the south side of the Philadelphia extension of the turnpike near Highspire and within the school district, under a lease agreement executed March 8, 1950, effective November 1, 1950, for a term of 28 years and 45 days. Under this lease, Gulf was obligated to and did construct at its own expense a service station and restaurant, and now operates the service station and sublets the restaurant to Howard Johnson. The title to the buildings as well as the land is in the commission which has the right to terminate the lease, subject, however, to payment to Gulf for the cost of buildings and improvements, less depreciation.

Gulf's rental is based on the amount of gasoline and oil sold, the gross receipts from the restaurant, and from the sale of other articles.

In May of 1969, the school district, under the authority of the Local Tax Enabling Act of December 31, 1965, P. L. 1257, 53 PS §6901, enacted a tax resolution to become effective on July 1, 1969, which provided, in pertinent part:

Section 301:

"The School District hereby imposes and levies upon all persons who lease tax exempt realty within the School District during all or any part of the tax-

able period a tax upon the privilege thereof at a rate and in a manner hereinafter set forth."[2]

Tax exempt realty was defined in section 201-D as follows:

" 'Tax Exempt Realty' shall mean all real estate within the School District, whether improved or unimproved, which in the taxable period is listed as exempt property not subject to real estate taxation upon the assessment rolls of the Board for the Assessment and Revision of Taxes of Dauphin County, Pennsylvania, excluding, however, single family homes, apartments, and dormitories that are used exclusively for residential dwelling purposes."

As plaintiff states in its brief and as was agreed by the pleadings, "the Turnpike is a divided highway with the lanes serving eastbound traffic separated from the lanes serving westbound traffic by a ten foot medial strip which is protected by a medial steel guard rail. There are no traffic lights nor any impediments to the movement of traffic upon the Turnpike. Access thereto is limited to 38 interchanges on the entire system. During the calendar year ending 1968, 49,792,526 motor vehicles used the Turnpike, of which number 44,757,724 used the east-west turnpike. During 1968, 4,899,789 motor vehicles passed the Gulf service station and restaurant at Highspire, 2,443,679 of which passed said station traveling in an eastbound direction, giving said vehicles immediate access thereto.

"In furtherance of the public purposes served by the Commission and the Turnpike, it is essential that needs of motorists traveling on the turnpike for food, drink and toilet facilities and for gasoline, oil and

---

[2] The tax imposed by this resolution was five percent of the rental paid and in the instant case amounted to $1,167.78 for the first quarterly installment, approximately 30 percent of Gulf's profits for the period.

service for their motor vehicles are met by service station and restaurant facilities, including those operated by Gulf Oil Corporation at Highspire. Under the Pennsylvania Turnpike Act (36 P. S. Sec. 653e) the Commission is authorized to contract with private firms for the placing of gasoline stations and restaurants adjoining the paved portion of the turnpike. The service station and restaurant are required under the said lease to be open 24 hours a day and seven days a week each and every day of the year. Approximately 135,000 to 150,000 motor vehicles per year stop at the Gulf Station at Highspire to purchase gasoline or motor oil or have some form of service performed. There are nine coin operated public telephones located on Gulf's premises to serve the motoring public. The Howard Johnson restaurant on the premises is utilized · by approximately 600,000 persons per year for food or rest room facilities. The premises maintained by Gulf also house a tourist information booth and employees of Gulf service station regularly furnish tourist information for motorists at no charge. Other services are also performed without charge for motorists who make no purchases at the station, and its lavatories and rest rooms are open to the entire motoring public."

The Local Tax Enabling Act of December 31, 1965, P. L. 1257, 53 PS §6901, et seq., does not specifically authorize the levying of a tax on the leasing of tax-exempt real estate[3] and so, unless we are prepared to

---

[3] The pertinent part of section 6902 authorizing the tax resolution is:

"The duly constituted authorities of . . . school districts of the third class . . . may, in their discretion, by ordinance or resolution, for general revenue purposes, levy, assess and collect or provide for the levying, assessment and collection of such taxes as they shall determine on persons, transactions, occupations, privileges, subjects and personal property within the limits of such political subdivisions. . ."

say *unequivocally* that, with a few limitations not here applicable, this act authorizes the local subdivisions to tax *anything*, we would be bound to construe this act and the tax levied under it strictly against the taxing authority and broadly in favor of the taxpayer.

In Fischer v. Pittsburgh, 178 Pa. Superior Ct. 16, 20-1 (1955), affirmed 383 Pa. 138, Judge Woodside, speaking for a unanimous court in construing the Act of 1947, which was the forerunner of the act under consideration, said:

"Municipal corporations can levy no taxes upon inhabitants or their property unless the power to do so is plainly and unmistakably conferred by the legislature. The grant of such right must be strictly construed and not extended by implication. Breitinger v. Philadelphia, 363 Pa. 512, 514, 70 A. 2d 640 (1950); Hillman Coal & Coke Co. v. Jenner Twp., 300 Pa. 108, 112, 150 A. 293 (1930).

"In Allentown School District Mercantile Tax Case, 370 Pa. 161, 171, 87 A. 2d 480 (1952) the court said: 'Neither municipalities nor school districts are sovereigns; they have no original or fundamental power of legislation or of taxation. They have the right and power to enact only those legislative and tax ordinances or resolutions which are authorized by an Act of the legislature; and if such ordinance or resolution is unauthorized or conflicts with the enabling statute or with some of its provisions it is in that respect or to that extent void: (citing). Moreover the grant of the right or power to levy taxes must be strictly construed; tax statutes should receive a strict construction and in cases of reasonable doubt, the construction should be against the government: (citing).'

"It has long been the rule that tax statutes should be strictly construed; and in cases of doubt the construction should be against the government. Boyd v. Hood, 57 Pa. 98 (1868); Scranton v. O'Malley Manu-

facturing Co., 341 Pa. 200, 204, 19 A. 2d 269 (1941); Sauer Appeal, 167 Pa. Superior Ct. 33, 35, 36, 74 A. 2d 700 (1950)."

The Fischer case concerned an income tax and it was argued that this was authorized under the term "privilege," and Judge Woodside said further:

"If the tax before us is considered a property tax on the plaintiff's inventory of manufactured goods or a privilege tax imposed for the privilege of doing business in the City of Pittsburgh the city has no authority to impose it upon the plaintiffs.

"In a sense even a property tax and a poll is a 'privilege tax' in that these taxes could be considered to have been imposed for the privilege of having property in, or residing within, the jurisdiction of the taxing authority, but the term 'privilege tax' has been given a more restricted meaning. Black's Law Dictionary (Third Edition) defines it as *a tax on the privilege of carrying on a business for which a license or franchise is required.* There is authority for considering 'privilege tax' and 'excise tax' as synonymous terms. 84 C.J.S. Taxation §121." Pages 25-6.[4]

In Mastrangèlo v. Buckley, 433 Pa. 352 (1969), a case decided this very year, the Pennsylvania Supreme Court said, page 363:

". . . the determination of whether the General Assembly has granted to a municipality the power of taxation in a particular area is subject to a strict construction and the grant of such power may not be found by implication. . . ."

In Dawson v. Kentucky Distilleries & Warehouse Company, 255 U. S. 288 (1921), it was said that ". . . To levy a tax by reason of ownership of property is to tax the property . . . It can not be made

---

[4] Italics ours throughout.

an occupation or license tax by calling it so." See also United Shoe Machinery Corp. v. Gale Shoe Mfg. Co., 314 Mass. 142, 49 N. E. 2d 913 (1943); Draughon v. Fox-Pelletier Corp., 174 Tenn. 457, 126 S. W. 2d 329 (1939); Cooley, Law of Taxation (4th ed., 1924).

But even though the chancellor were persuaded that this tax is a true privilege tax and that the privilege of leasing tax-exempt realty is a proper subject of tax under the enabling act, still we would be obliged to strike the tax down as it affects plaintiffs here.

The record is clear from the undisputed testimony of the Director of Operations of the Pennsylvania Turnpike Commission and from the undisputed testimony of a representative of Gulf Oil that the tax in question would eventually be a burden on the turnpike commission.

Under the authority expressly granted by the Pennsylvania Constitution, the legislature has granted a tax exemption in respect to property of the turnpike commission when used for a public purpose.

Section 14 of the Act of May 16, 1940, P. L. (1941) 949, 36 PS §653m, which is the turnpike act applicable to that part of the turnpike on which the station in question is located, provides:

"The accomplishment by the commission of the authorized purposes stated in this act being for the benefit of the people of the Commonwealth and for the improvement of their commerce and prosperity, in which accomplishment the commission will be performing essential governmental functions, the commission shall not be required to pay any taxes or assessments on any property acquired or used by it for the purposes provided in this act. . . . "

The chancellor is satisfied that a restaurant and service station such as those here described are necessary for the safe and efficient operation of the turn-

pike[5] and were contemplated by the legislature.

If they were operated by the commission directly, they would, of course, be free from tax. The fact that the commission chose, as it had a right to do under the law, to operate them through a lease to another does not make the premises or their operation any more taxable. See Moon Township Appeal, 425 Pa. 578 (1967); Moon Township Appeal, 387 Pa. 144 (1956); Bensalem Township School District Appeal, 43 D. & C. 2d 729 (1967); Allegheny County v. Moon Township, 436 Pa. 54 (1969).

The Supreme Court of New Jersey, in Walter Reade, Inc. v. Twp. of Dennis, 36 N. J. 435, 177 A. 2d 752 (1962), in a case involving restaurant facilities on the Garden State Parkway and the effort of a township to tax in the hands of a lessee the leasehold interest and the buildings, struck down the tax, saying:

"The question is whether the statutory exemption accorded the Authority and its property was intended to depend upon whether the authorized facilities were operated for the public use directly by the Authority rather than through an arrangement with another. The statute does not explicitly answer the question but the solution readily emerges from the sense of the situation.

"The Legislature intended that the Authority furnish these facilities as part of its public service. It was granted immunity from taxation for the further assurance of the financial success of this self-liquidating project": 117 A. 2d 752, 755.

There, as in the instant case, the authority was authorized to operate its facilities either directly or through arrangements with other persons. The au-

---

[5] The gift shop is another matter, but we need not deal with it in these proceedings.

thority could then choose the method which it believed would best serve the public and at the same time be the most economical, and although Gulf in the instant case and Reade in the New Jersey case might initially bear the tax involved, it is obvious that the burden will eventually be upon the authority in future negotiations. Taxes will affect the rental and "It would be strange for the Legislature to enable the Authority to choose among several modes of rendering this public service and then encumber the choice with tax consequences": Reade, supra, page 755.

We must look beyond the label by which a tax is denominated to the true nature of the tax and upon whom the burden falls. The chancellor concludes that this tax is a tax on the Pennsylvania Turnpike Commission and, therefore, must fall.

## CONCLUSION OF LAW

1. The tax resolution of the Middletown Area School District enacted on May 5, 1969, known as "A tax upon the privilege of leasing tax exempt real estate within the Middletown Area School District," is unlawful and void as it applies to plaintiffs, Gulf Oil Corporation and Pennsylvania Turnpike Commission.

## DECREE NISI

And now, December 29, 1969, it is ordered, adjudged and decreed that defendant, Middletown Area School District, is enjoined from enforcing any of the provisions of the resolution entitled, "A tax upon the privilege of leasing tax exempt real estate within the Middletown Area School District," against Gulf Oil Corporation and Pennsylvania Turnpike Commission.

The prothonotary is directed to enter this decree nisi and to notify the parties to this proceeding or their counsel forthwith.

If no exceptions are filed within 20 days after the entry of this decree, a final decree will be entered.