STEPHEN KOLAKOWSKI & another[1] vs. LEIGH D. FINNEY.

Bristol. September 14, 1984. — November 19, 1984.

Present: HENNESSEY, C.J., LIACOS, NOLAN, LYNCH, & O'CONNOR, JJ.

*District Court*, Appellate Division. *Contract*, Novation, Construction of contract. *Sale*.

Inasmuch as the defendant in an action commenced in a District Court was entitled to claim a trial in the Superior Court within twenty-five days following service on him of the plaintiff's amended complaint increasing the amount claimed from $1,500 to $25,000, by failing to do so he waived any right to have the case transferred to the Superior Court after the Appellate Division's decision, and it was thus proper for him to appeal to the Supreme Judicial Court from that decision. [339-340]

A letter from the sellers of a business to the buyer, in which the sellers acknowledged that the salaries being paid to them under the contract for purchase and sale of the business were being paid by a corporation as "nominee" for the buyer, did not have the effect of substituting the corporation for the buyer for purposes of the buyer's obligations under the agreement. [341]

A provision in a contract for the purchase and sale of a business, stating that the buyer was to pay instalments of the purchase price at the rate of $5,000 a year in each year in which the after-tax profit of the business equalled or exceeded that amount and providing for interest on the unpaid balance, affected the timing of payments, but not the buyer's ultimate obligation to pay, and the buyer could not, in the circumstances, discharge his obligation to the sellers by transferring the business to a nominee corporation which thereafter became defunct. [341-342]

CIVIL ACTION commenced in the Second District Court of Bristol on August 17, 1976.

The case was heard by *Milton R. Silva*, J.

*Jeffrey S. Entin* for the defendant.
*Joseph V. Aguiar* for the plaintiffs.

---

[1] Emil Kolakowski.

O'CONNOR, J. The plaintiffs (sellers) brought an action in a District Court to recover money allegedly owed them under a written contract for the purchase and sale of a business. The trial judge found for the sellers, and the defendant (buyer) claimed a report to the Appellate Division. The Appellate Division dismissed the report, and the buyer appeals here. We affirm.

The sellers owned and operated a business called Reinhardt Signs. On July 1, 1973, they entered into a written agreement with the buyer for the purchase and sale of the business. The buyer's lawyer drafted the agreement. The sellers had no lawyer. The agreement contained the following provisions:

> "1. Seller sells to buyer or his nominee, all his right, title and interest in his business of sign manufacture and the like including the good will thereof as a going concern, stock in trade, fixtures, equipment, tools, effects, book accounts and other debts now due and owing to seller upon account or in respect of said business, and all securities for same, and also all contracts and engagements, benefits, and advantages, which have been entered into by seller, or to which he is or can be entitled on account or in respect of said trade or business and the real estate situated at 57 Walnut Street, Fall River, Massachusetts.
> " . . . .
>
> "2. Buyer purchases above described property from seller and agrees to pay therefor to seller Fifty Thousand ($50,000) Dollars payable as follows:
> "(a) Twenty five hundred ($2,500) Dollars upon the execution of the Agreement.
> "(b) Twenty-two thousand five hundred ($22,500) Dollars at the time of performance, transfers and conveyances called for by this Agreement.
> "(c) Balance of Twenty-five Thousand to be paid at the rate of Five Thousand ($5,000) Dollars which includes imputed interest at the rate of 6% per year at the end of each said year if the net profit after taxes accruing each year ending June 30th to the business of

Reinhardt Signs is sufficient in each said year to cover that amount and, if not, in each and every year thereafter when such sufficient amount exists until fully paid. The Buyer shall pay to the Seller six percent (6%) interest per annum each and every year on the unpaid balance on all monies owed for each said year, if any.

" . . . .

"11. It is further agreed that Stephen Kolakowski and Emil Kolakowski shall work for a period of One (1) year from the date of sale as employees of Leigh D. Finney, or nominee, to aid with the manufacturer [*sic*], painting, repairing and sale of signs at the following wages and that Emil Kolakowski and Stephen Kolakowski shall be paid the net weekly compensation of One hundred ($100) Dollars."

In accordance with paragraph 2 the buyer paid the sellers $2,500 when they signed the agreement and $22,500 on August 16, 1973, when they transferred the assets to him. In the agreement the parties assigned a value of $42,400 to the tangible assets transferred.

The sellers received a letter dated April 9, 1974, from the buyer's lawyer which stated:

"I have been contacted by the accountant for Finney Advertising Companies, Inc., which is the nominee referred to in the above mentioned agreement. Inasmuch as Finney Advertising Companies, Inc. is fulfilling Mr. Finney's part of the contract with you, would you kindly acknowledge by signing the enclosed copy of this letter and returning to me in the return envelope that your salaries are being paid by Finney Advertising Companies, Inc. as the nominee superseding Mr. Finney's position in his agreement with you."

They signed and returned the letter.

As he recounts in his brief, the buyer testified at trial that Finney Advertising Companies, Inc., "owned and managed

the business known as Reinhardt Signs until it became defunct
in early January, 1982 or late December 1981." Although the
District Court judge made no express finding on this issue, we
infer from the letter of April 9, 1974, supported by the buyer's
testimony, that sometime before April 9, 1974, the buyer trans-
ferred the Reinhardt Signs business to Finney Advertising Com-
panies, Inc. The buyer also recounts that he testified that "said
business never in the years of operation made a profit of over
$5,000.00 as contemplated by the Agreement." We will as-
sume, favorably to the buyer, that neither Reinhardt Signs nor
Finney Advertising Companies, Inc., made a profit in excess
of $5,000 in any year.

A year after the transfer of the assets the buyer paid $300
in interest to the sellers, but he made no further payment. On
August 17, 1976, the sellers brought an action in the District
Court for $1,500 in interest. Nearly five years later they
amended their complaint. The amended complaint sought
$25,000 plus accrued interest. Trial followed on two counts:
breach of contract and deceit. The judge found for the sellers
on the contract and awarded them $25,000 plus $1,703 interest.
He ordered judgment for the buyer on the deceit count. The
buyer claimed a report to the Appellate Division, and the Ap-
pellate Division dismissed the report. This appeal followed.

At trial the buyer requested several rulings that the judge
denied. Those requests adequately preserved for appeal the
two arguments that the buyer advances here. First, he argues
that when the sellers signed the April 9, 1974, letter and re-
turned it to his lawyer, they agreed to release him from his
obligation to pay them and to look instead to Finney Advertising
Companies, Inc., for payment. Second, he argues that the
agreement required him to "pay the balance of $25,000.00 of
the purchase price only upon the contingency that he made a
profit of $5,000.00 in each succeeding year."

Before we address the buyer's substantive contentions, we
briefly consider whether the buyer has a right of appeal to this
court. The sellers originally sought $1,500.00, an amount
below the threshold for prompt removal to the Superior Court
established by G. L. c. 231, § 104. Had the sellers not amended

their complaint to assert a $25,000.00 claim, the buyer, within ten days after receipt of notice of the Appellate Division's decision, could have caused the case to be transferred to the Superior Court for a new trial. G. L. c. 231, § 104. *Orasz* v. *Colonial Tavern, Inc.*, 365 Mass. 131, 134-140 (1974). *Mc-Gloin* v. *Nilson*, 348 Mass. 716, 718-719 (1965). There is authority in our cases on both sides of the question whether a defendant in that position may elect to forgo a trial in the Superior Court and instead appeal directly here. See *Parrell* v. *Keenan*, 389 Mass. 809, 811 n.4 (1983); *Kingsley* v. *Massachusetts Bay Transp. Auth.*, 383 Mass. 874 (1981); *Pupillo* v. *New England Tel. & Tel. Co.*, 381 Mass. 714, 715 (1980); *Fusco* v. *Springfield Republican Co.*, 367 Mass. 904, 906 (1975); *Orasz* v. *Colonial Tavern, Inc., supra* at 139. However, we need not now decide that issue.

A party who, at the time of the Appellate Division's decision, cannot remove his case to the Superior Court, clearly does have a right of appeal to this court. See *Conroy* v. *Boston*, 392 Mass. 216, 216 n.1 (1984). In this case the sellers amended their complaint to assert a claim above G. L. c. 231, § 104's, threshold. With respect to a claim over its threshold, General Laws c. 231, § 104, provides that a party may claim a trial in the Superior Court within twenty-five days after "service of the pleading which asserts the claim . . . on which the right to remove is based." The word "pleading" includes "papers such as the complaint, answer, and reply which frame the issues." *Taylor* v. *Allis-Chalmers Mfg. Co.*, 320 F. Supp. 1381, 1385 (E.D. Pa. 1969). The amended complaint served precisely the function of the original complaint: it set forth the sellers' legal theories and the relief sought. It was a pleading. We hold, therefore, that G. L. c. 231, § 104, authorized the buyer to claim a trial in the Superior Court within twenty-five days after service of the sellers' amended complaint. Because he did not do so, he waived his right to have the case transferred to the Superior Court after the Appellate Division's decision. Therefore the Appellate Division's decision was final, and the buyer properly appealed directly to this court.

We proceed to the merits. The buyer states in his brief that the sellers assented "to the substitution of parties to the Agreement by virtue òf their assent to [the letter of April 9, 1974] . . . . The reference to the fact that the substituted corporation was the entity paying the plaintiffs' salaries was merely parenthetical." This interpretation of the letter is untenable. The letter's opening language, "I have been contacted by the accountant for Finney Advertising Companies, Inc.," established a context for the subsequent request. The letter dealt with an accounting matter, not a substitution of parties to a $50,000 agreement. It asked the sellers to "acknowledge . . . that your salaries are being paid by Finney Advertising Companies, Inc." They did that and no more.

The buyer apparently bases his argument on the letter's reference to Finney Advertising as "the nominee superseding Mr. Finney's position in his agreement with you." This reference offers the buyer no support. Paragraph 11 of the agreement, which concerns the employment of the sellers, provides that the sellers shall work for one year "as employees of Leigh D. Finney, *or nominee*" (emphasis added). Paragraph 1 provides that "Seller sells to buyer *or his nominee*" (emphasis added). But the word "nominee" nowhere appears in paragraph 2, the paragraph concerning the buyer's obligation to pay the sellers. The sellers obligated themselves to the buyer or his nominee, but they agreed to look for satisfaction to the buyer only. Fairly interpreted, the letter's reference to "the nominee superseding Mr. Finney's position in his agreement with you" referred to paragraph 11, not to the crucial paragraph 2. "There is no novation until the creditor accepts the new debtor in full substitution for the former one and thus completely releases the old debt." *Tudor Press, Inc.* v. *University Distrib. Co.,* 292 Mass. 339, 341 (1935). The sellers did not do that. Their signing and returning the letter in no way affected the buyer's obligation under paragraph 2 of the agreement.

We move, then, to a discussion of that obligation. The buyer asserts in his brief that the agreement requires him to "pay the balance of $25,000.00 of the purchase price only upon the contingency that he made a profit of $5,000.00 in each succeed-

ing year." "The purpose of stating a condition in the contract," he writes, "was to achieve the effect of a discharge from liability if the event does not happen." Apparently the buyer takes the position that the sellers' claim against him must be dismissed because the sellers failed to prove at trial that Reinhardt Signs made a profit exceeding $5,000 in any year. We disagree.

Paragraph 2 states that the buyer "agrees to pay . . . to seller Fifty Thousand ($50,000) Dollars." Clause (c) of that paragraph provides: "Balance of Twenty-five Thousand *to be paid at the rate* of Five Thousand ($5,000) Dollars which includes imputed interest at the rate of 6% per year at the end of each said year if the net profit after taxes accruing each year ending June 30th to the business of Reinhardt Signs is sufficient in each said year to cover that amount and, if not, in each and every year thereafter when such sufficient amount exists *until fully paid*" (emphasis added). The final sentence of clause (c) calls for the buyer to pay six percent interest "*each and every year* on the unpaid balance on all monies owed for each such year, if any" (emphasis added). These provisions express the intention that the buyer would pay the sellers $50,000. We think that the parties intended that Reinhardt Signs' profitability could affect the timing of payments, but not the ultimate obligation to pay. If the buyer continued to operate Reinhardt Signs in good faith, the agreement required him to pay $5,000 to the sellers only in years that the business proved sufficiently profitable. We do not think, however, that the parties intended to allow the buyer to discharge his obligation to the sellers by transferring Reinhardt Signs' business to a nominee corporation which thereafter became defunct. We cannot believe that the parties intended to transfer for only $25,000 assets which they valued at $42,400. If the agreement be ambiguous in that regard, it is properly construed against the buyer because his lawyer drafted it. *Massachusetts Turnpike Auth.* v. *Perini Corp.*, 349 Mass. 448, 454 (1965).

*Palmer* v. *Guillow*, 224 Mass. 1 (1916), relied on by the buyer, does not support his position. In that case, unlike this one, the parties agreed to condition the defendant's liability on the occurrence of a subsequent event.

*Order dismissing report affirmed.*