The issue before us in this case is whether the parties fulfilled their obligations relative to a right of first refusal (ROFR) contained in a purchase and sale agreement executed in 2010 (2010 agreement). We conclude that the plaintiff had standing to exercise the ROFR with regard to a 2013 third-party offer to purchase, the parties could not agree on a ROFR purchase and sale agreement despite reasonable and good faith negotiations, and because defendant E, F and C, LLC (EFC), did not ultimately sell the disputed property to the third party, the plaintiff's ROFR remains in force.
Background. Prior to 2010, Congress Fine Dining, LLC (Congress) leased from EFC level one and part of level two of "The Congress Condominium," a five-level condominium building located at 355 Congress Street in Boston. On April 9, 2010, Congress and EFC entered the 2010 agreement and ultimately completed the sale of levels one and two of the building to Congress's nominee. The 2010 agreement provides that it is between EFC as "Seller" and Congress "or its nominee, as provided in Section 12, herein," as the "Buyer." Section 12 provides that "[a]cceptance of the Deed by Buyer or the nominee(s) designated by Buyer with the same principals as Buyer, as the case may be, shall be deemed to be a full performance and discharge of every agreement and obligation herein contained or expressed, except for the representations which survive the delivery of the Deed by their terms."[3]
Section 19 of the 2010 agreement provides a ROFR for the "Buyer" for the third level of the condominium building (option space). The ROFR requires EFC to give notice to the buyer of EFC's intent to sell the option space, including the basic terms, conditions, and effective purchase price of a third-party offer.[4] The ROFR provides that "[u]pon receipt of the Third Party Purchase Offer from Seller, Buyer shall have a right to purchase the Option Space on the terms set forth therein. Tenant's right to purchase the Option Space shall be exercised by giving notice to Seller to such effect within three (3) business days after Buyer's receipt of the Third Party Purchase Offer" (emphasis supplied). The ROFR further provides that if "Buyer exercises its purchase Right of First Refusal, then Seller and Buyer ... shall enter into a mutually acceptable purchase and sale agreement ... within ten (10) business days from Buyer's acceptance of said offer. Said ROFR Purchase Agreement shall reflect the terms and conditions set forth in the Third Party Purchase Offer, including a closing date of at least sixty (60) days from the date of execution of the ROFR Purchase Agreement."
The 2010 agreement contemplates various scenarios that could arise from the exercise or nonexercise of the ROFR. First, if the buyer does not exercise its ROFR, the premises shall be sold free and clear of the ROFR. In addition, "[t]he non-exercise by Buyer of its rights ... shall be deemed a waiver of any of Buyer's rights of first refusal to purchase the Premises ... at any subsequent time," unless, as relevant here, the seller "fails to enter into an enforceable purchase and sale agreement on the terms set forth in said Third Party Purchase Offer within ninety (90) days." Second, if the buyer notifies the seller of its election to purchase the premises and then fails to execute and deliver the required ROFR purchase agreement once one has been mutually agreed upon by the buyer and seller, the buyer shall be deemed to have waived its rights under the ROFR, the seller shall have the unrestricted right to sell, and the buyer's ROFR shall terminate. Finally, if the seller and buyer each act reasonably and in good faith but fail to agree on a ROFR purchase agreement within ten days, such failure shall be treated as a nonexercise by the buyer of the ROFR.
In June of 2010, counsel for Congress sent an electronic mail message (e-mail) to EFC's counsel stating "please note that the Unit Deed and 6(d) certificates and any [other] closing [documents] for the Buyer should run to Congress Street 355-1, LLC, a Massachusetts limited liability company, which is the new entity created to take title to the Unit. There will be an internal lease of the Unit back to Congress Fine Dining, LLC." (Emphasis added.) At closing, Congress Street 355-1, LLC (355-1), took title to levels one and two and leased level one to Congress, which operates a restaurant known as Lucky's in it.
During the course of Congress's prior tenancy and after 355-1 took title to levels one and two, disputes arose between Congress or 355-1 and EFC, first regarding past rent owed to EFC by Congress and then regarding the common areas and costs. In addition, Congress asserted that EFC's manager, Francis X. Crowley, had mismanaged condominium funds. Those disputes led to a lawsuit commenced by 355-1 which was ongoing when in 2013, EFC received a third-party offer to purchase level three. A second lawsuit brought by the building department against EFC in the Housing Court was also pending. As a result, the purchase and sale agreement negotiated between EFC and the third-party purchaser included a purchase price of $1.8 million and an indemnity agreement whereby EFC would indemnify the third-party purchaser from any and all losses, costs, liabilities, and damages, including attorney's fees, in connection with the two pending lawsuits.
As specifically required by the 2010 agreement, EFC gave written notice of the third-party offer. Notice was addressed to the "Lyons Group, Ltd."[5] The letter referred to the 2010 ROFR between EFC and Congress, as buyer. It stated, "You have the right to purchase this space on the terms set forth in the enclosed Agreement for the third level of The Congress Condominium." It enclosed both a copy of the purchase and sale agreement and the indemnification agreement.
In response, Congress gave the required notice that it was exercising its option to purchase the option space in a timely September 3, 2013, letter signed by David Joaquin, as a "member" of Congress. Although the judge found that Joaquin did not have authority to sign the letter, EFC raised no issue regarding Joaquin's authority and proceeded to negotiate with Congress. During negotiations to come to a mutually acceptable purchase and sale agreement, Congress took the position that the indemnification agreement was part of the third-party purchase and sale agreement and insisted it be included as part of its agreement. EFC declined, taking the position that it made no sense to indemnify Congress for litigation to which it or a related entity was a party. The parties could not come to agreement, and EFC ultimately took the property off the market and did not sell it either to the third party or to Congress.
Congress commenced this action seeking specific performance of the ROFR, and damages for breach of contract and violation of G. L. c. 93A.[6] EFC filed counterclaims seeking a declaratory judgment that Congress waived its right of first refusal, and damages for breach of contract arising from amounts owed under the former lease, for failure to negotiate with EFC in good faith regarding the ROFR, and for violation of G. L. c. 93A.[7] After motions to dismiss were denied, the judge conducted a jury-waived trial. The judge concluded that there was no contract between Congress and EFC because when Congress designated 355-1 to take title to levels 1 and 2, all of the rights of the buyer contained in the 2010 agreement transferred to 355-1 and 355-1 did not exercise the ROFR. The judge further concluded that even if there had been contractual rights, the parties' failure to enter into a mutually agreed-upon purchase and sale agreement after ten days constituted a waiver of the ROFR by the buyer pursuant to § 10(c) of the 2010 agreement. The judge also found in favor of Congress on EFC's counterclaims and dismissed them.
Discussion. Congress's claims. "The interpretation of a contract is a question of law for the court. Whether a contract is ambiguous is also a question of law." Eigerman v. Putnam Invs., Inc., 450 Mass. 281, 287 (2007). "Contractual language is ambiguous if it is susceptible to more than one meaning and reasonably intelligent persons would differ as to which meaning is the proper one" (quotation omitted). James B. Nutter & Co. v. Estate of Murphy, 478 Mass. 664, 669 (2018). "[W]e construe a contract as a whole, so as 'to give reasonable effect to each of its provisions.' " Id., quoting J.A. Sullivan Corp. v. Commonwealth, 397 Mass. 789, 795 (1986).
Congress argues on appeal that the judge erred in concluding that pursuant to the 2010 agreement, only 355-1 had the right to exercise the ROFR. Because we construe the 2010 agreement to be at least ambiguous with respect to whether Congress retained authority to exercise the ROFR, and the conduct of both parties clearly shows their understanding that Congress retained such authority, we agree with Congress that the judge erred in concluding it had no rights under the 2010 agreement.
It is true that the opening paragraph of the 2010 agreement defines "Buyer" as Congress "or its nominee, as provided in Section 12." The ROFR in § 19 extends to the "Buyer." Reading the definition of "Buyer" literally, either Congress or its nominee arguably is empowered to act as "Buyer" and exercise the ROFR.
At first blush, the 2010 agreement's definition of "Buyer" as Congress or its nominee supports EFC's argument. However, notwithstanding the definition, throughout the 2010 agreement, the term "Buyer" is frequently used in reference to only Congress. Furthermore, in several places, "Buyer or its nominee" is used in the body of the 2010 agreement, which is clearly redundant if the term "Buyer" was intended by definition to include Congress "or its nominee." Strikingly, the clause immediately after the opening paragraph defining "Buyer" as Congress or its nominee states that "Buyer, as tenant, and Seller, as landlord, are parties under and pursuant to" a July, 2000, lease. "Buyer" in that clause undoubtedly means Congress, which in fact was then in a landlord/tenant relationship with EFC when the 2010 agreement was executed. Moreover, there can be no mistake that Congress is the "Buyer" referred to in § 12 with authority to designate a nominee.
In the ROFR itself, "Buyer or its nominee" is used in some places and only "Buyer" in others. It provides that the seller "shall not sell all or any portion of the Option Space to any bona fide third-party other than to Buyer, or its nominee, unless Buyer has been given notice" (emphasis added). Within the ROFR section, it appears that the drafters used "Buyer or its nominee" when they wanted rights to extend to a nominee and used "Buyer," alone, when referring to Congress. See Kolakowski v. Finney, 393 Mass. 336, 341 (1984). Perhaps most importantly, at one point in the ROFR, it abandons the use of "Buyer or its nominee" altogether and provides that "[t]enant's right to purchase the Option Space shall be exercised by giving notice to Seller" (emphasis added). On the facts found by the judge, "tenant" can only refer to Congress.
At the very least, the inconsistent use of the terms "Buyer" (when clearly intending to reference only Congress), the continued use of the terms "Buyer or its nominee" despite the definition of "Buyer" as including its nominee, and the absence of any terms specifically assigning Congress's rights under the ROFR to its nominee render the 2010 agreement ambiguous as to who may exercise the ROFR after a nominee is designated to take title. Where ambiguity exists, "[t]here is no surer way to find out what the parties meant, than to see what they have done." Martino v. First Nat'l Bank of Boston, 361 Mass. 325, 332 (1972), quoting Pittsfield & North Adams R.R. v. Boston & Albany R.R., 260 Mass. 390, 398 (1927). Here, EFC did not provide notice of the third-party offer to 335-1;[8] EFC's notice of the third-party offer stated that Congress held the ROFR; EFC negotiated with Congress over the purchase and sale agreement; and EFC's court filings indicated that Congress held the ROFR. By its conduct, EFC has resolved any ambiguity by consistently treating Congress as the holder of the ROFR.
That Congress could and did designate a nominee to take title to the premises does not compel a conclusion that the nominee would become the "Buyer" for purposes of portions of the 2010 agreement unrelated to taking title of the premises. Significantly, the parties have not produced any document assigning Congress's rights under the 2010 agreement to 335-1 -- other than the e-mail designating 335-1 as the entity that would accept the deed to the premises. Both the June e-mail designating 335-1 as the entity "created to take title" and § 12 of the 2010 agreement discussing the nominee's role in taking title are silent as to any role for the nominee in regard to the ROFR. In short, there is no suggestion that the nominee designated to take title would also become the "Buyer" for purposes of the ROFR contained in § 19.
The judge also decided that even if Congress could contractually enforce the ROFR, the failure to enter into a mutually agreed-upon purchase and sale agreement after ten days is deemed a waiver of the ROFR by the buyer.[9] As noted above, however, that is not the result where, despite good faith negotiations, the parties never reached agreement on an ROFR purchase agreement, and the seller did not close on the sale with the third party.
The judge rejected EFC's claim that Congress failed to negotiate in good faith. We agree that cleared of the underbrush, the parties had a good faith disagreement as to whether the terms of the indemnification agreement should be incorporated into the ROFR purchase and sale agreement where Congress was a party or related entity in one of the two litigations to which the indemnification agreement applied. We do not view as unreasonable Congress's desire to have the same protections from attorney's fees and other costs of litigation from which the indemnity agreement protected the third-party purchaser. Nor do we view EFC's position of declining to indemnify Congress in a suit involving Congress or a related entity unreasonable. Neither party proposed a compromise position, and their precise disagreement as to whether the terms of the indemnity agreement as proposed should be included in the ROFR agreement does not mean the parties failed to negotiate reasonably or in good faith. See Duclersaint v. Federal Nat'l Mtge. Ass'n, 427 Mass. 809, 814-815 (1998) (difference of opinion as to applicability of statute to undisputed facts necessitating involvement of court does not mean parties acted unfairly). When the parties were unable to come to agreement on a purchase and sale agreement, EFC withdrew the property from the market and did not sell it to the third party. Pursuant to the 2010 agreement, therefore, Congress's ROFR remains enforceable should EFC receive a new offer on the ROFR premises.
EFC's claims. We agree with the judge that EFC failed to prove that Congress owed rent due under the lease existing prior to April, 2010. The e-mails relied on by EFC state only that Congress disagreed with EFC's numbers and that even if Congress were to accept EFC's numbers without dispute, which Congress did not, the calculations were still wrong. Contrary to EFC's argument, Congress did not admit to owing anything under the lease.
EFC's claim that Congress breached it obligation of good faith and fair dealing under the 2010 agreement fails in light of the implied finding that both parties negotiated in good faith to come to a mutually agreeable ROFR purchase and sale agreement. That Congress's goal in acquiring level three may have been motivated at least in part by a desire to gain control of management of the building does not mean it breached a covenant of good faith and fair dealing. It could hardly have been a secret among the experienced business entities to these negotiations that an owner of progressively more of a condominium building might have in mind gaining control of the management of the building.
Similarly, that Congress commenced this action after EFC took the property off of the market and decided not to sell it, does not mean Congress brought it for an ulterior or illegitimate purpose resulting in damage. A reasonable fact finder could well have concluded that one or the other party did not negotiate in good faith to reach agreement on a purchase and sale agreement. As the parties' c. 93A claims are derivative of their contract claims, we agree that their c. 93A claims, too, must fail. Congress makes no argument that the claims against Francis X. Crowley, individually, were improperly dismissed.
The judgment shall be modified to provide that the ROFR remains in full force and effect. As so modified, the judgment is affirmed.
So ordered.

Section 20 of the 2010 agreement further provides that "[e]xcept to a nominee with the same principals as Buyer, Buyer shall not assign this Agreement or any rights hereunder without the prior written consent of Seller."

Section 19(a) provides in part that "Seller shall not sell all or any portion of the Option Space to any bona fide third-party other than to Buyer, or its nominee, unless Buyer has been given notice of a letter of intent to sell (the 'Third Party Purchase Offer') and the right to match the terms therein. The Third Party Purchase Offer shall set forth all basic terms and conditions upon which it is made, and shall express the total consideration for the Option Space in terms of a cash dollar amount or allowance (such dollar amount and other consideration being hereinafter referred to as the 'Effective Purchase Price')."

The 2010 agreement identifies Congress Fine Dining, LLC, as having an address at "c/o The Lyons Group, 7 Landsdowne Street, Boston, Massachusetts 02215." The 2010 agreement does not identify The Lyons Group as the party to be notified.

Congress also brought claims against Francis X. Crowley, manager and member of EFC and managing trustee of the condominium, for tortious interference with contractual relations and violation of c. 93A. Those claims were decided against Congress, and Congress makes no argument specific to those claims on appeal.

EFC's counterclaims assert that "[t]he right of first refusal ... gave Congress the right to 'match the terms' of any bona fide third party offer made to EFC to purchase Level 3." It also asserted that "[u]pon information and belief, Congress and the Congress Affiliate are owned and operated by the same individual(s) or entities in such a manner that representatives of Congress exercise pervasive control over the Congress Affiliate with a substantial disregard of the separate nature of the purported corporate entities and with a substantial disregard of corporate formalities."

EFC seems to ignore that if Congress was not the proper entity to exercise the ROFR, it provided notice to the wrong entity.

The judge refers to paragraph 10(c) but the ROFR is found in § 19.